GARDNER and others, ex'rs, &c. *vs.* PRINTUP and others.

A testator gave to D. H. P. and J. H. P. the *proceeds of a bond and mortgage* conditioned for the payment of $8000, which he held against B. & S. One of the legatees died during the lifetime of the testator. Previous to his death the testator commenced proceedings for the collection of the amount due upon the bond; which resulted in a sale by the mortgagors to N. Y. of a part of the mortgaged premises, for the sum of $5000; of which $1700 was paid to the testator, and receipted on the mortgage, and the balance was secured by the bond of N. Y. & G. Y. for $3300, payable to the testator, and endorsed by him as a payment upon the mortgage; but the lien of the mortgage upon the part of the premises purchased by N. Y. was not released. The testator received upon the bond of N. Y. and G. Y. $1641, during his lifetime. *Held*, that the legacy bequeathed to D. H. P. and J. H. P. was a specific and not a general pecuniary legacy.

*Held also*, that when any part of the proceeds of the bond and mortgage were used by the testator, in the payment of debts, or otherwise, so as to have lost their separate existence or identity as such proceeds, the legacy was, *pro tanto*, adeemed; and that the surviving legatee was not entitled to be reimbursed out of the testator's estate, for the moneys received by the testator upon the mortgage, or upon the bond given by N. Y. and G. Y.

*Held further*, that what remained due upon the bond of N. Y. and G. Y. at the death of the testator, was the proceeds of the original securities, and that that sum was actually still due upon, and secured by, the mortgage; the bond of N. Y. and G. Y. being no more than a collateral security to that amount. And that the amount due upon such bond passed as a part of the specific legacy.

A change of the subject matter of a legacy into a different fund, does not defeat the bequest.

Where a legacy is given to two or more persons, *jointly*, the survivor will take the whole; although the others die in the lifetime of the testator.

IN EQUITY. The bill was filed in this case by the executors of the last will and testament of William I. Printup, to obtain a decision of the court upon the construction of one of the provisions of the will, and a direction as to the payment of a legacy bequeathed by that provision. The facts are stated in the opinion of the court.

*D. McMartin*, for the plaintiffs.

*Geo. Yost, T. G. Younglove*, and *E. T. Schenck*, for the defendants.

GRIDLEY, J.   The questions presented for the consideration of the court arose upon the seventh clause of the will, which is as follows: "I do bequeath to my grandchildren, David H. Printup and Joseph H. Printup, sons of William H. Printup, the *proceeds of a bond and mortgage* I hold against Aaron Briggs and William Schenck, for their use and benefit." The testator made his will on the 20th of February, 1840, and died on the 11th day of April, 1842, without in any manner revoking or altering the same. One of the legatees, Joseph H. Printup, died about six months before the testator. The bond and mortgage which were the subject of this bequest, were executed on the 13th of November, 1837, and were respectively conditioned to pay $8000, in six annual instalments, with annual interest on all sums unpaid. The securities were given for a part of the purchase price of a farm sold to the mortgagors by the testator; and it appears from the testimony in the case, that soon after the making of the will he regarded them as doubtful security for the amount, with the amount of interest due thereon. And with the view of getting a partial payment, or additional security, he placed them in the hands of an attorney with directions to foreclose the mortgage, unless some part of the moneys due should be paid, or additional security should be given. Proceedings were accordingly commenced for the collection of the moneys due upon the bond, which resulted in a sale by the mortgagors to Nicholas Yost, of a part of the premises described in the mortgage, for the sum of $5000; of which $1700 was paid in cash to the testator, and receipted on the mortgage; and the balance was secured by the bond of Nicholas and George Yost for $3300, executed directly to the testator, and endorsed by him as a payment upon the mortgage. The evidence shows that, as between the testator and the mortgagors, this was understood to be an *absolute payment* of the amount secured by the Yost bond. But I infer that it was not the intention of the testator to relinquish the lien of the mortgage upon the part of the premises conveyed to N. Yost, as a collateral security for the moneys secured by the $3300 bond. I draw this conclusion from the statement made by the witness

George Yost; who says that Mr. Printup refused to execute to his father a formal release of the premises purchased by him, but said that he would never enforce the mortgage against those premises, if the purchase price should be paid to him as agreed. It also appeared that during the lifetime of the testator, he received upon the Yost bond the sum of $1515, and at a later period the additional sum of $126.

I. The first question which is material to be decided is, whether the legacy bequeathed to David H. and Joseph H. Printup, is a *specific*, or a *general pecuniary* legacy. It is undoubtedly true that the courts have manifested a disposition to regard legacies as *general* instead of *specific*, to prevent the contingency of their being defeated by the destruction of the security, or the loss of the fund, out of which they were to have been paid. Accordingly, in several cases in which the testator had specified the fund out of which the sum bequeathed was by the will to be paid, and where, in his lifetime, he had disposed of the fund to other purposes, it was held that his prevailing intention was to give a *sum of money to the legatee*, and that the reference to the fund or security was merely an intimation to his executors of that portion of his estate out of which it would be most expedient to pay the sum bequeathed. In these cases the legacies were adjudged to be *general*, and were ordered to be satisfied out of the testator's estate, notwithstanding the fund or security had been disposed of before his death. The following belong to this class of cases. (*Pulsford* v. *Hunter*, 3 *Bro. C. C.* 416. *Pawlet's case*, *T. Raym.* 335. *Ambler*, 566. 2 *Ves. jr.* 639. *Boys* v. *Williams*, 2 *Russ. & Myl.* 689. *Id.* 699. 1 *Bro. C. C.* 472. *Ambler*, 59. 2 *Mad.* 223.)

*This*, however, is clearly a specific legacy. The testator does not bequeath a certain *sum of money*, and direct that it shall be *paid out of the proceeds* of this mortgage; but he gives the "*proceeds*" *specifically*. He does not give a sum of money, equal to the amount secured by the mortgage, nor equal in amount to the sum that was due upon it at the time of making the will. In other words, he does not make a bequest of a *sum*

Gardner *v.* Printup.

*of money* at all, but of a particular security specified by him, or more strictly speaking, of the "proceeds" of that security. Indeed the counsel for the surviving legatee does not claim that this is a general legacy. He however insists that such an interpretation is to be given to the word "proceeds" as to embrace not only the proceeds or avails of the bond and mortgage, which should happen to be on hand at the death of the testator, and capable of being traced and identified as such ; but also a sum of money equal to what had been received or collected by the testator, in his lifetime, although used by him in the payment of his debts, or otherwise mingled with and sunk in his general estate. To this construction it seems to me there are several objections. (1.) It would convert this legacy, which is conceded to be specific, into a general pecuniary bequest, and thus prevent the application to it of the principle of ademption, which is universally applicable to the former class of legacies. (9 *Ves.* 360. 2 *P. Wms.* 328. 4 *Ves.* 568. 2 *Cox,* 180. 2 *Ves.* 623. 5 *Mad.* 209.) (2.) The legacy, being specific, as we have already seen, the "*proceeds*" must exist in some form at the death of the testator, or the principle of ademption applies. This proposition is not denied, but it is argued that they do exist after they have been collected by him and lost in his estate, in the shape of a quasi deposit for the legatee. I cannot assent to this reasoning. As I have already said, it confounds the distinction between specific and general legacies. The "proceeds" of the bond and mortgage may exist in as distinct a form as the original securities, or they may have been lost and have ceased to exist as a separate entity. Of the truth of this proposition the facts of this very case furnish a striking illustration. When, therefore, any part of the proceeds have been used in the payment of debts or otherwise, so as to have lost their separate existence and identity as such proceeds, the legacy is *pro tanto, adeemed.* There is no substantial difference between the application of the principle to a case like this, and to the case of a bequest of a specific debt or security, which, if paid in whole or in part, is *adeemed pro tanto,* whether the payment was voluntary or compulsory. (*Barker v. Rayner,*

5 *Mad.* 208.  *Ambler,* 569.   9 *Ves.* 360.   4 *Id.* 574.)   (3.) The
parol evidence in the case (which is admissible for that purpose
upon the authority of *Monck* v. *Monck,* (1 *Ball & Beatty,* 298,)
fortifies the presumption that the ademption was intended by
the testator.  He had already bestowed upon the legatees a much
larger share of his property than upon any of his other grand-
children.  He had devised to them, or one of them, a certain
farm which was incumbered by an outstanding mortgage, and
when he spoke of receiving the moneys from Yost, he declared
his intention to apply them to the payment of this incumbrance.
It can hardly be presumed that he meant (as he must have
done if the construction contended for be the true one,) thus
to add to the very liberal provision which he had already
made in favor of these legatees.  For these reasons I think
that the surviving legatee is not entitled to be reimbursed out
of the testator's estate, for the moneys received by him either
upon the mortgage or upon the Yost bond.

II. The second question to be considered, is, as to what is
embraced and intended by the words *"proceeds of the bond
and mortgage."*  I have already in part discussed and disposed
of this question.  The counsel for the several heirs, whose in-
terest is adverse to that of the surviving legatee, insist that the
legacy is merely a bequest of the bond and mortgage, as secu-
rities, and that the $3300 bond was an absolute payment of so
much of the debt ; so that the legacy was reduced, at the death
of the testator, to what was actually due upon those securities
at that time.  In the view which I entertain of the case it is
not very material how this point is determined.  Nevertheless,
I think the court is bound to give effect to all the words em-
ployed by the testator in describing the subject matter of the
bequest.  When he made his will he regarded the security of
the mortgage a scanty one ; and he probably anticipated that
other securities, either as payment of, or as collateral to, the
bond and mortgage, might be given.  The will speaks at
the death of the testator ; and if, at that time, the Yost bond
can be fairly regarded as a part of the *"proceeds"* of the ori-
ginal bond and mortgage, it must of necessity pass by the be-

quest. I am of the opinion, however, that it was something more than mere "proceeds." It was a substitute for, and a collateral representation of the mortgage, to the amount of $3300. I say *collateral,* because it represented a part of the *debt* which was still secured by the mortgage. The mortgage was still a *subsisting lien* upon the premises purchased by Nicholas Yost, and this bond of N. and G. Yost was only a collateral security for the debt to that amount. It is true that, in equity, Briggs and Schenck were discharged from the personal obligation to pay; and the land retained by them was relieved from the lien of the mortgage, to the extent of the $5000. But the *testator expressly refused to release from his mortgage lien* the premises bought by Yost; and only gave the purchaser an assurance not to enforce it if the $5000 should be paid. If, however, the $3300 bond had not been paid, he might have enforced his mortgage, for that amount, against the premises in the hands of Yost. If I am right in this conclusion, it may be assumed not only that what remained due upon the Yost bond was literally the proceeds of the original securities, but that the sum in question was *actually still due upon* and *secured by* the mortgage; the Yost bond being no more than a *collateral security* to that amount. The case of *Walton* v. *Walton,* (7 *John. Ch. Rep.* 258,) is conclusive authority to show that a change of the subject matter of a legacy into a different fund, does not defeat the bequest. In that case it was held that the moneys collected and paid in to trustees, upon the expiration of the charter of the U. S. Bank, passed under a bequest of the testator's interest in 30 shares of the said stock. In the same case it was also decided that a legacy of two shares in the Western Inland Lock Navigation Company, was not *adeemed* or *extinguished,* notwithstanding this stock had, in the lifetime of the testator, been, by some arrangement, increased to six shares; and after that, by an act of the legislature, the whole stock had become vested in the state, and a certain sum had been paid to the stockholders as a compensation for its value. *A fortiori,* in this case, the moneys due

Gardner *v.* Printup.

upon the Yost bond, at the death of W. I. Printup, passed as a part of the legacy.

III. The only remaining question relates to the right of the surviving legatee to the *whole* legacy, notwithstanding the death of his brother. It seems to be settled by the authorities that when a legacy is given to two or more persons *jointly*, as here, the survivor will take the whole, although the others die in the lifetime of the testator. It has even been held that this consequence would follow, notwithstanding the testator revoked the interest originally given to either of them; for each is a taker of the whole, but not *solely:* for the *whole* is bequeathed to *both*, and not a *moiety* to *each*. (*See* 2 *Atk.* 220; *Ambler*, 126, 175; 3 *Ves.* 629, 632; 1 *Vern.* 217, 425; 3 *Bro. C. C.* 15; *Dickens*, 392.) It has been argued, however, that it is a fair conclusion that the testator did not intend to give this right of survivorship to the subject of this bequest, because in the third clause of his will he made express provision in favor of the surviving legatee. That clause, however, embraced a devise of real estate as well as a bequest of personal, and therefore, since the enactment of our statute, it was necessary to confer the right of survivorship in the real estate by express language, or the survivor would not take. There is nothing, therefore, to prevent the application of the authorities I have cited upon this point, and they are certainly conclusive.

The surviving legatee is consequently entitled to the whole of the legacy.

Decree accordingly.