SHARP, Ex'R, Etc. v. McPHERSON et al.

LEGACY ADEEMED BY SUBSEQUENT ACT OF TESTATOR.

A testator bequeathed all of his personal property to his sister, who had been his housekeeper for over fifty years, and also gave her an estate for her life in a farm which he described as "the farm on which I reside, situate, etc.;" and directed that at her death his executor should sell such farm, and all his real estate, and divide the proceeds between a niece and two nephews. After the making of the will, the testator sold the farm, and took a mortgage thereon for part of the purchase money, a portion of which remained unpaid at his death. A part of the money paid to the testator was unaccounted for, a part he used for his support, and the remainder he gave to the plaintiff to keep for him, who deposited it in bank at interest, where it remained up to the testator's death. The executor has in his hands for distribution but $200 in addition to the sums thus left of the proceeds of the sale of the farm; and the testator at no time owned any other real estate. Upon action brought by the executor for construction of the will:

*Held*, That the legacy to the niece and nephews was specific, and adeemed by the sale of the farm by the testator, and the avails of such sale, including the amount collected by the executor upon the mortgage, would pass to the sister, under the bequest to her of all the personal property.

APPEAL from the court of common pleas of Columbiana county.

LAUBIE, J.

This case came into this court on appeal, and was brought to obtain a construction of the will of the decedent, Richard McPherson.

The will was dated June 20, 1887, and the subject-matter of the devise in question was a farm which was sold by the testator in his lifetime, October 2, 1888, and he died September 9, 1892. He sold this farm for the sum, in round numbers, of $4,575. He received a down payment of $1,000, and subsequently an additional one of $1,787, and there was, at the time of his death, $2,396 due of the purchase-money, secured by a mortgage. The $1,000 which he received as the down payment, the testator must have expended, as no account is given of it. The second payment of $1,787, he gave to Mr. Sharp, the plaintiff, to keep for him, and it is agreed that Sharp deposited it in bank, at interest, where it remained up to the death of the testator, with the exception of $400 of it, which he paid for the support of the testator, so that, of that payment, the testator consumed $400. The testator owned no other real estate at any time, and owed no debts substantially. The chattel property of the testator, with the exception of a small amount of furniture, was also sold by the testator during his lifetime, and what became of the proceeds of that sale, the amount of which was small, we are not advised. The executor collected the last installment of the purchase-money of

the farm. Of the amount for distribution in the executor's hands, there is but $200 over and above that which was received from the sale of the farm; so that under the bequest to Isabella McPherson of all his personal property, it appears she would receive only about $200, unless it is determined in this case that she is also entitled to the avails of the sale of this farm.

This question depends upon the construction to be given to the following items of the will:

"*Item 1.* It is my will that all my just debts and funeral expenses be first paid.

"*Item 2.* I give and devise to my sister, Isabella McPherson, to use and dispose of as she may desire, all my personal property of every description (after paying my debts and funeral expenses). I also give and devise to my said sister, the farm on which I reside, situate in Washington township, Columbiana county, being part of sections Nos. 6 and 12, in said township, and containing 122 acres, during her natural life.

"*Item 3.* At the death of my said sister, it is my will that my said farm and all other real estate that I may own, shall be sold by my executor herein named, either at public or private sale as he may think best, and upon such terms as he shall think best, and the proceeds, after paying all costs and expenses, shall be divided and distributed as follows: One-half thereof shall be paid to my niece, Jane Longworthy, or her heirs; one-fourth thereof to my nephew, Richard B. Hogue, now of Kansas, and the balance one-fourth to my nephew, Richard M. Haugh, of Wellsville, Ohio."

The plaintiff was made "executor, with authority to sell," etc.

The sister, Isabella McPherson, it is agreed, had kept house for the testator for fifty years upon this farm, and until it was sold by him in October, 1888. The question made here is to whom do the proceeds of the sale go? Upon the part of Isabella McPherson, it is claimed that the legacy to the nephews and niece of the proceeds of the farm is a specific one, and was adeemed by the sale of the farm by the testator in his lifetime, and that the money passes to her under item 2 of the will. On the other hand, the nephews and niece claim that it is not a specific legacy, but a demonstrative one, and that the sale in the lifetime of the testator did not adeem the legacy, and that they are entitled to all the proceeds of the farm which can be now identified, and all the proceeds save $1,400 are identified by the executor. The character, therefore, of the bequest, whether it is a specific one or a demonstrative one, will settle and determine the question in the case.

Without undertaking the impossible task of reconciling the conflicting decisions upon the question, and involving myself in a labyrinth of cases devoted to overnice distinctions and fine spun theories, I think it sufficient, for the disposition of this case, to state generally the principles applicable thereto.

A specific devise or bequest is one, which, according to the intent of the testator, is limited to the subject matter given. A demonstrative legacy is one which the testator charges upon, or directs to be paid out of, a particular fund, if the language used indicates that the fund was referred to only as a convenient means of payment, and that the legacy should be paid even if the fund should fail. And upon this distinction it is generally held that where a specific thing is given, *or its proceeds, if ordered to be sold and distributed*, the devise or bequest is specific, and a sale of the thing by the testator in his lifetime revokes the devise or adeems the gift. 3 Pom. Ev., (2d ed.), sections 1130, 1131, 1133, and notes; 2 Redf. on Wills, (3d ed.), star-paging 132–141, and 145; *Walton* v. *Walton*, 7 Johns, Ch. and note thereto in 11 Am. Dec., 456, 468, 469, 470; 2 Am. L. C. Eq. (4th Am. ed.), 600, 649.

It is said in the note, in 13 A. & E. E. L., 75, that, "In many cases a distinction exists between the bequest of a thing *in specie*, and the bequest of its proceeds; in the former case, a sale will work an ademption, in the latter it will not." And again, in note on page 76, and in 2 L. C. Eq., *supra*, on page 672, it is said:

"It is well settled that a bequest of the proceeds of a debt will not be adeemed by payment, and the principal is the same where the debt is bequeathed and its proceeds." These statements are misleading, and some of the cases cited to sustain them, hold either the opposite doctrine, or a modified form of it. As an example, the syllabi of two of the cases cited in support of the proposition in the Ency. of L., *supra*, are given on the same page in the next note, as follows:

"Testator, by will, gave to his executors a bond and mortgage for $7,000.00, the present amount of principal due, and which I hold against J, in trust to pay the interest to A for life, then to convert the bond and mortgage into money, and to divide and distribute the net proceeds. Before the testator died, the amount was paid to him by J, and at his death the money remained on deposit at the bankers. *Held*, that the legacy was a specific one, and was adeemed. *Abernathy* v. *Catlin*, 2 Dem., (N. Y.) 341."

"Testator, after expressly disposing of all of his estate, except certain claims against the United States government, bequeathed a specified sum out of the proceeds of said claims to complainants, or so much as should remain after paying certain legacies to others. At that time, his claims were pending before the court of claims, but before his death, he collected them, and invested the proceeds in securities, realizing a sum sufficient to have satisfied the bequest to complainants. *Held*, that the legacies were specific, and were payable only in case the executors collected the funds from the source indicated, and that the testator by collecting them, caused an ademption of the legacies. *Geo. Inf.* v. *Jones*, 37 Fed. Rep., 750."

And in 2 L. C. Eq. (4th Am. ed.), in the note referred to, on page 649, many cases are cited to sustain a statement there made, that the doctrine of some of the earlier cases of the distinction between a bequest of a debt, and its proceeds, was exploded, and no longer recognized by the courts, and that "it is now established, that such bequests are specific, and not demonstrative, and will fail if the debt is satisfied or extinguished before the will goes into effect." See also cases cited on pages 613, 623, 655, 662, *et seq*.

*McNaughton* v. *McNaughton*, 34 N. Y., 201, cited in the notes referred to in support of such distinction, seems to be relied upon by counsel on either side of the case at bar, and I refer to it here specifically only on that account. That case is another example of the inaccuracy of the notes referred to. The testator in that case, bequeathed all of his personal estate to his widow, and a life estate in his real property, and, at her death, directed all his real estate to be sold, and the proceeds to be divided amongst his nephews and nieces. He owned no real estate but a farm, at the date of the will, which he sold in his lifetime, and took a mortgage for part of the purchase money, which was unpaid at his death. After he sold the farm, the testator bought a village lot, and that was all the real property he owned at his death. It was held that the avails of the mortgage passed to the widow, under the bequest to her of all the personal property.

Our attention is called to what is said by PORTER, J., in one of the opinions delivered in the case, viz.:

"The bequest was of *the proceeds of his real estate*. And in that sense it was specific, but it was in no sense a specific bequest of *the proceeds of the farm*, which he afterwards sold. If the latter had been its character, it may well be questioned whether the sale would have operated as an ademption of the gift."

And he cites as a basis for that doubt, *Coleman* v. *Coleman*, 2 Ves. Jun., 639; *Ogle* v. *Cook*, Id., 686; *Havens* v. *Havens*, 1 Sandf. Ch., 329; *Gardner* v. *Printup*, 2 Barb., 83; *Pierrepont* v. *Edwards*, 25 N. Y., 121.

The first two cases are of the "earlier cases," referred to in 2 L. C. Eq., *supra*, whatever may be said of *Gardner* v. *Printup*. *Havens* v. *Havens* was a bequest of the testator's stock in an insurance company, and it was held, very properly, to pass that which remained on hand at his death. *Pierrepont* v. *Edwards*, was a case of an annuity of $7,000.00, during widowhood (with no other

provision for the widow), payable out of the income of the estate, and was held, not inaptly, to be a demonstrative legacy.

I do not, however, pretend to say that all the later cases repudiate this distinction; but the current of the authorities is against it; and in our own state, I think the question is placed beyond cavil by the case of *Gilbreath* v. *Winters' Ex'rs*, 10 Ohio, 64. In that case, counsel cited substantially all the reported cases, *pro and con*; and the court say in reference thereto:

"In the investigation of this case, we have been very much aided by the industry of counsel in collating the authorities and derived no small light from the manner in which they have presented their views."

So that the court had before them substantially all of the cases reported up to that time, and passed upon the point deliberately, in the light thus furnished, with as much intelligence, so far as a consideration of the principle involved is concerned, as it could do at this later date.

The bequest in that case was:

"I also give and bequeath to my wife, Mary, all the amount of moneys and interest that may be recovered of and from Dr. Kirker, for the purchase of the Penrose estate, to her and her assigns."

It was therefore the gift of the proceeds of that debt, and without limiting it, in express terms, to an amount to be collected by the executor; and yet the court held, that it was a specific legacy, and was adeemed by the payment to the testator in his lifetime. The court say:

"The testator does not give an amount of money to his wife, and refer to the amount due to ascertain the quantity; but the language is, that the amount of moneys and interest, etc., that may be recovered of and from Dr. Kirker. This language, in its ordinary acceptation, would seem to bestow this specific debt, and if nothing should be recovered, it could hardly be successfully claimed that the amount due from Dr. Kirker should be paid to the legatee out of the general assets of the estate."

So that, on this controverted question, whether the gift was to be regarded as a gift of the proceeds of the debt, or of the debt itself, it was held to be a specific bequest which was adeemed upon collection of the amount by the testator; and a gift of the proceeds of a debt due the testator, cannot be distinguished, in principle, from a gift of the proceeds of a farm.

The gift of the proceeds of a particular farm named, is substantially a gift of the farm itself—a devise of the farm; and if, therefore, it is not in existence as a possession of the testator at the time of his death, there is nothing for the will to operate upon. The thing is gone, and therefore it cannot pass under the will to the devisee.

In *Holt et al.* v. *Lamb et al.*, 17 Ohio St., 374, it is held: "Where land is devised to a tenant for life, with direction that at his death it be sold, and the proceeds divided among his children, the children may elect at his death to take the land itself, or to have it sold for their benefit."

As the beneficiaries may take it *in specie*, it is apparent that the direction of the testator that the executor shall sell it and divide the proceeds among the legatees or devisees, is simply for convenience, in order that each may receive his equal share of the farm. Being in effect a devise of the farm itself, if the farm is sold by the testator in his lifetime, it is a revocation of the devise.

It is immaterial, therefore, in this instance, whether it be regarded as a gift of the proceeds, or a gift of the farm itself, because a sale by the testator in his lifetime, in the one instance adeems the legacy, and in the other revokes the devise.

The will is to take effect from the death of the testator; and where there is no farm of the description owned by the testator at his death, there is nothing whatever for the devise to act upon, and the direction to the executor to sell and divide the proceeds becomes impossible of performance. The farm being gone, the gift fails, and the sale by the testator indicates a change of intention on his part as to its disposition.

While the determination of the question is governed somewhat by the rules. of law applicable thereto, yet it depends principally upon the intent of the testator. What did he intend? Did he intend to give the specific thing, or to limit the gift to the particular subject-matter? Or did he intend to give an amount of money in any event, and refer to the fund merely as a convenient means of payment? As already stated, the sale of the farm indicates a change of his intention. Clearly it must in this case, because, in the first place, he devises the farm to his sister, for life, and, secondly, directs his executor to sell the same *after her death*, and to divide the proceeds, after paying the costs and expenses of sale, among his nephews and niece. Now, the very thing which he does, in effect, give, and out of which, and out of which only, the money that was to go to these legatees could arise, he himself sold in his lifetime, and used and consumed a portion of the proceeds. It is therefore evident that it evinces a change of intention upon his part, and indicates that these legatees should not have the proceeds of that farm. He intentionally, by the sale, revokes the devise of the life estate to the sister, and leaves uncanceled and unrevoked the provision that all of his personal property, of whatever description, should pass to his sister absolutely; and, therefore, it may be said that he had changed the land into money so that it might go to this indigent sister. The object of the whole will seems to be, not to provide for the nephews and the niece, but to provide a support for the sister, she who had lived with him until old age, and to whom, as it appears, he could give but a small amount of property at best for her support. And any other view of this will would seem to frustrate that intention, because she would get but $200.00 for her future support out of the whole estate, if the proceeds of the land thus sold by the testator should go to these nephews and niece.

The fact that he took a mortgage for the purchase-money, and that part of it remained unpaid at the time of his death, does not change the proposition. It does not change the gift from a specific to a demonstrative one. 3 Pom. Eq., (2d ed.), section 1131, and note; 1 Redf. on Wills, (3d ed.), star-paging, 38–40; 2 Redf. on Wills, 137; 13 Am. & Eng. Enc. of Law, 75, 76.

Section 5956, Revised Statutes, does not affect the question. In 3 Pom. Eq., 1131, and note, the statutes of the states upon this question are referred to, and as they are substantially as ours, I call attention to what is said upon that question: "It is proper to notice in this connection, certain legislation adopted in several of the states, and perhaps in most of them, of which sections 1301–1303 of the California Civil Code, may be taken as the type. These sections, and the similar statutes of other states, provide that when property is specifically devised or bequeathed, the testator's executory agreement to sell it, or his charge or incumbrance put upon it, or his conveyance, settlement, or other act, whereby his interest in the property is altered, but not wholly divested, shall not work a revocation, that is, an ademption of the gift, but the devisee or legatee shall still take the property, subject to the rights of the third person thus created. These statutory provisions do not seem to interfere with the general doctrine concerning the ademption of specific legacies."

In *Brush* v *Brush*, 11 Ohio, 291, 292, it is held: "The statute of the state should have no effect in a case like the present, because, in order to come within the statute so that the whole interest of the testator is not disposed of, there must be something remaining in the land itself, some interest in the land itself, which would descend to the heir at law, and not pass to the personal representative as personal property." The amount due upon the mortgage would not descend to the heir at law, but would pass to the administrator or executor as personal property, and therefore, there was no title or interest retained in the land by the testator which could descend, and the statute has no effect on the proposition.

It is claimed that the sale by the testator was a mere equivalent of the power of sale given to the executor, and therefore the proceeds, which were identified, pass to the nephews and niece; but it is not, because the sale by the testator destroyed the life estate, which it was his intention that his sister should have for

her future support. In *McNaughton* v. *McNaughton*, 34 N. Y., 206, it was held that the sale by the testator was not an equivalent to a sale by the executor, because it took away the life estate given in the lands, which the executor could not do—he could sell only after the life estate had been put an end to by the death of the life tenant.

We think that this is a specific legacy within the strictest definition of the term as given in the books. That it is one, which, under the intention of the testator, is limited to the particular subject-matter given. Again, and it is but another method of stating that the legacy is specific, and therefore is adeemed by a sale of the thing in the lifetime of the testator, a specific legacy must be paid in the particular mode pointed out, and can be paid in no other. 2 Redf. on Wills, star-paging, 138, note 27; *Geo. Inf.* v. *Jones, supra; Clark* v. *Packard,* 9 Gray, 471. In the last named case the court say: "If there had been no provision beyond the mere devise of the real estate, no doubt the sale of it would have operated as an ademption, and if the legacy had been bequeathed upon a contingency which could never occur, the devisee could not have recovered it, and it must have been lost. Thus, in a prior clause of the will, he devised one-third part of the same farm to his daughter Harriet, but if his executor should think proper to sell the farm, then, and in that case, he bequeathed to her one-third of the proceeds of the sale. But as the farm was disposed of by the testator himself in his lifetime, both the devise and the legacy failed. The devise, because there was nothing at the testator's decease upon which it could take effect; and the legacy, because the contingency of a sale by the executor had become impossible."

In the case at bar the gift was of the proceeds of the sale of a farm to be sold by the executor after the death of Isabella McPherson, the life tenant, and as that became impossible of performance, by the disposition of the farm by the testator in his lifetime, the legacy failed; and while the sale of the farm revoked the devise of the life estate to Isabella McPherson, it turned the land into money; and that money passed to her under the bequest of all his personal property, so far, of course, as it existed at the time of his death, after the payment of costs, expenses of administration, and the debts; and the decree may be taken accordingly.

*John McVicker*, for Plaintiff.

*Wells & Wells*, for Isabella McPherson.

*Potts & Moore*, for Richard B. Hogue.

*W. F. Lones*, for Richard M. Haugh.