(80 Misc. Rep. 196.)

## In re BOUK'S ESTATE.

(Surrogate's Court, Saratoga County.   March, 1913.)

1. WILLS (§ 765*)—CONSTRUCTION—ADEMPTION.
     Where a will made a bequest "of the amount due on the bond and
mortgage I hold on my mother's farm," and such indebtedness was paid
to testatrix during her lifetime, and it appeared from other clauses of
the will that she knew the principles of ademption, such bequest, being
specific in character, became adeemed before her death.
     [Ed. Note.—For other cases, see Wills, Cent. Dig. § 1979;  Dec. Dig. §
765.*]

2. WILLS (§§ 753, 755*)—"SPECIFIC LEGACY"—"DEMONSTRATIVE LEGACY."
     A "specific legacy" is a bequest of a specified part of a testator's per-
sonal estate as distinguished from others of the same kind;  while a
"demonstrative legacy" is a bequest of a certain sum of money, stock,
or the like, payable out of a particular fund or security.
     [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1939–1944, 1947,
1948;  Dec. Dig. §§ 753, 755.*
     For other definitions, see Words and Phrases, vol. 2, pp. 1980, 1981;
vol. 8, p. 7633;  vol. 7, pp. 6600–6604;  vol. 8, p. 7803.]

3. WILLS (§§ 440, 441*)—CONSTRUCTION—INTENT.
     In construing a will the intention of testatrix must be gathered from
the language of the will, aided, where the language is uncertain, by the
surrounding circumstances.
     [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 956, 958;  Dec. Dig.
§§ 440, 441.*]

4. WILLS (§ 753*)—CONSTRUCTION—SPECIFIC AND DEMONSTRATIVE LEGACIES—
     PRESUMPTION.
     Legacies are presumed to be general or demonstrative rather than
specific, where the language of the will permits that construction.
     [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1939–1944;  Dec.
Dig. § 753.*]

5. WILLS (§ 858*)—CONSTRUCTION—DISPOSITION OF LEGACY ADEEMED.
     Where the bequest of a portion of testatrix's estate became adeemed
before her death, the executor took such portion in trust as residuary
legatee, under a provision of the will bequeathing to him in trust the
balance, rest, residue, and remainder of testatrix's estate, and nothing
was left as unbequeathed assets.
     [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 2173–2183;  Dec.
Dig. § 858.*]

Proceedings upon the judicial settlement of the account of the
executor of the estate of Loisse Marie Bouk, deceased.  Decreed
according to opinion.

William A. Mehan, of Ballston Spa,. for executor.
Butler & Kilmer, of Saratoga Springs, for Jacob Bouk, Jr.
Leary & Fullerton, of Saratoga Springs, for Eliza J. Baker.

OSTRANDER, S.   February 17, 1892, Loisse M. Bouk made her
will, by the twelfth clause of which she provided as follows:
     "12th. I give, devise and bequeath to my Executor hereinafter named the
amount due on the Bond and Mortgage I hold on my Mother's Farm in

Cabery, Ford Co., Ill., in trust said amount to be kept intact during the life of my Father the income thereof collected yearly or allowed to remain uncollected as my Executor shall deem it advisable to the extent said income is not needed by said Executor to use for the support, care and maintenance of my Father, and my Executor is hereby directed to collect and use so much of said income as he shall deem proper and necessary for my said Father's use and benefit and any amount collected and not used, invest, the same as the principal, at the death of my Father or at my death if I should survive my Father. I direct my Executor hereinafter named to give the said sum and any of the income so invested to my brother Jacob Bouk, Jr., or in case of his death to his lawful issue if any survive if said Brother has no lawful issue then surviving to the children of my sister Eliza J. Baker, share and share alike."

The mortgage in question was made September 28, 1876, by Lydia Bouk, mother of the testatrix, for $1,750 and interest. On the day after the will was made an agreement between Lydia Bouk and the testatrix was indorsed on the mortgage, fixing the amount unpaid on the mortgage at $2,986.05.

On April 5, 1892, Lydia Bouk died, devising the mortgaged premises to Jacob Bouk, Jr.

Jacob Bouk, Sr., was 75 years old and feeble. The testatrix and Jacob Bouk, Jr., contributed to his support until he died in July, 1892.

March 28, 1896, Jacob Bouk, Jr., gave to testatrix, in satisfaction and in place of the Lydia Bouk mortgage, a new mortgage for $3,600. Interest on this mortgage was paid from time to time by Jacob Bouk, Jr., to testatrix, and was not kept apart intact in any separate funds by the testatrix.

January 26, 1907, Jacob Bouk, Jr., paid to the testatrix $4,039.12 in satisfaction of the last-named mortgage. When said mortgage was paid, the testatrix deposited the avails of it in her general bank account with other funds.

May 6, 1911, the testatrix died, and later her will of February 17, 1892, was proved and recorded as her last will and testament. The testatrix was never married. By the sixteenth clause of her will testatrix provided:

"16th. I give, devise and bequeath to my Executor hereinafter named in trust all the balance, rest, residue and remainder of my estate of all kinds both real and personal wheresoever situated to use the income thereof as he deems advisable for the benefit of the children of my said sister Eliza J. Baker until the youngest becomes twenty-one years of age, at which time and as soon as practicable thereafter my Executor is to divide the amount so given him by this the 16th clause of my will, between the issue of my said sister Eliza J. Baker share and share alike, if any of my said sister's children die before the youngest shall arrive at 21 years of age, leaving lawful issue which survive at the time the youngest child of my said sister shall arrive at 21 years of age, the issue of such deceased child to take the part of the property devised by this the 16th clause of my will, the same as its parent would take if living."

From the inventory filed in the estate of the testatrix it appears that she had cash on her premises, $5.65, cash in bank, $17.12, and various securities, merchandise, and household goods. But it is impossible to identify any of her estate as the proceeds of the Jacob

Bouk, Jr., mortgage, and it is apparent that the testatrix never kept this fund intact as a separate fund.

[1, 2] Was this legacy given by the twelfth clause specific or demonstrative? If specific, it is conceded that the legacy was adeemed in the lifetime of the testatrix. A specific legacy is a bequest of a specified part of a testator's personal estate as distinguished from all others of the same kind. A demonstrative legacy is a bequest of a certain sum of money, stock, or the like, payable out of a particular fund or security. A bequest of the proceeds of a certain bond and mortgage is specific; while the bequest of $1,500, payable out of the proceeds of a specified bond and mortgage, is a demonstrative legacy. A demonstrative legacy differs from a specific one in the particular that if the fund pointed out for the payment of the legacy fails resort may be had to the general assets of the estate. Crawford v. McCarthy, 159 N. Y. 514, 54 N. E. 277.

[3] The first question is what intent was in the mind of the testatrix. This we must gather from the language of her will, and, if the language be uncertain, then the circumstances surrounding the transaction may shed light upon the question.

[4] In construing such legacies the courts have frequently found great difficulty in determining whether the testator intended to give the specific security, or a sum equal to the nominal amount of such security. But, inasmuch as the presumption is that the testator intended a real benefit to the legatee, courts consider legacies as general or demonstrative rather than specific, where the language of the will permits that construction. Giddings v. Seward, 16 N. Y. 365–367.

In Walton v. Walton, 7 Johns. Ch. 258, page 263, 11 Am. Dec. 456, Chancellor Kent says:

"The courts are so desirous of construing the bequest to be general that if there be the least opening to imagine the testator meant to give a sum of money, and referred to a particular fund *only* as that out of which he meant it to be paid, it shall be construed pecuniary, so that the legacy may not be defeated by the destruction of the security."

But he continues, after citing, among other cases, that of Fryer v. Morris, 9 Ves. Jr. 360, where the testator gave "the sum or sums of money which his executors might receive on a note of 400 pounds," all these legacies are specific, and a receipt of the money by the testator is an ademption of the legacy. And he says (page 264) that the reasoning is that "if the legacy is meant to consist of the *security* it is specific, though the testator begins by giving the sum due upon it."

In this twelfth clause the bequest is of "the amount due on the bond and mortgage I hold on my mother's farm," etc., to be kept intact during the life of my father, and so much of the income as necessary paid for the father's support; the balance of the income to be added to the principal. If the father survived her, then at his death, or if she survived the father, then at her death, she directs her executor "to give the said sum and any of the income so invested" to her brother, Jacob Bouk, Jr.

Though no specific sum is named as the amount due on the bond and mortgage, it is argued that an amount which can be made certain is certain, and that the amount intended to be given was $2,986.-05, which was found unpaid on the mortgage at the settlement between testatrix and her mother on the day after making the will. But at the death of the testatrix nothing was due on this mortgage.

It will be noted that the bequest is not of an amount equal to the amount due on the mortgage, but of the amount due on it. She gives directions for the accumulation of the income of this particular fund, not needed for her father's support, and addition thereof to the principal. And at his death, or hers, if she survive the father, "the said sum and any of the income so invested," to her brother, Jacob Bouk, Jr. These references are all to the particular fund and the income from it, and not to a general fund of that amount. After her father's death and her brother became able to pay off this claim, she accepted the payment, discharged the claim, and no longer kept the fund intact.

There is no substantial difference between "the amount due" on a specified security and "the proceeds" of that security, as in Gardner v. Printup, 2 Barb. 83. Nor does the language under consideration differ materially from that used in Fryer v. Morris, supra. The legacy is strictly limited to the amount due on this security, and does not in any other terms refer to any sum of money.

The will speaks as of the time of the death of testatrix, and she then held no mortgage on her mother's farm, and there was no amount due on such mortgage. The mortgage was to be dealt with during her life and income added to it.

In the fourteenth clause of her will she bequeaths certain bridge stock, and gives directions for the payment of an equivalent amount, in case the stock should have been disposed of by her in her lifetime. This shows that she knew the principles of ademption.

I think the legacy was specific in character and became adeemed before the death of the testatrix. It is with regret that I reach this conclusion, since it leaves her only brother, Jacob Bouk, Jr., with whom she was apparently friendly, without any substantial recognition in her will.

[5] The next question upon which the executor seeks direction is whether the portion of the estate adeemed, as aforesaid, falls into the residuary estate provided for in article 16 of her will, or whether it is to be disposed of as unbequeathed assets, to her next of kin.

By the first 10 articles of her will, the testatrix bequeaths various personal effects to divers persons, and provides for the purchase of cemetery lots and headstones for herself, her father and mother. By the eleventh clause she provides:

"11th. I give, devise and bequeath all my stock, fixtures and articles kept by me in business, also all money, evidences of debt and securities of all kinds, both real estate and personal property wherever situated not hereinbefore specific devised to my Executor hereinafter named in trust for the following uses and purposes."

By the twelfth, thirteenth, fourteenth, and fifteenth clauses she bequeathed to her executor, in trust, various sums and properties in

trust for various persons, being an enumeration of the trusts upon which the property mentioned in the eleventh clause was given.

By the sixteenth clause she provides:

"16th. I give, devise and bequeath to my Executor hereinafter named in trust all the balance, rest, residue and remainder of my estate of all kinds both real and personal wheresoever situated to use the income thereof as he deems advisable for the benefit of the children of my said sister Eliza J. Baker until the youngest becomes twenty-one years of age, at which time and as soon as practicable thereafter my Executor is to divide the amount so given him by this the 16th clause of my will between the issue of my said sister Eliza J. Baker share and share alike, if any of my said sister's children die before the youngest shall arrive at 21 years of age, leaving lawful issue which survive at the time the youngest child of my said sister shall arrive at 21 years of age, the issue of such deceased child to take the part of the property devised by this the 16th clause of my will, the same as its parent would take if living."

This is the real residuary clause in the will.

In Morton v. Woodbury, 153 N. Y. 243, 255, 47 N. E. 283, 286, Judge Martin, writing for the court, quotes from Judge Gray in Riker v. Cornwell, 113 N. Y. 115, 20 N. E. 602, as follows:

"I think the doctrine is firmly established, by the reported cases and by the text-books, that where the residuary bequest is not circumscribed by clear expressions in the instrument, and the title of the residuary legatee is not narrowed by special words of unmistakable import, he will take whatever may fall into the residue, whether by lapse, invalid dispositions, or other accidents."

Judge Martin also quotes with approval from Judge Andrews in Lamb v. Lamb, 131 N. Y. 227, 234, 30 N. E. 133, 134:

"But where the language of a residuary clause is ambiguous, the leaning of the courts is in favor of a broad rather than a restricted construction."

Applying this doctrine to the present case, I think that the executor takes, in trust, as residuary legatee, under the sixteenth clause, and that nothing was left as unbequeathed assets. Banks v. Phelan, 4 Barb. 80, 91; King v. Woodhull, 3 Edw. Ch. 79; Kerr v. Dougherty, 79 N. Y. 327; Matter of Benson, 96 N. Y. 499, 48 Am. Rep. 646; Carter v. Board of Education, 144 N. Y. 621, 39 N. E. 628; Matter of Miner, 146 N. Y. 121, 40 N. E. 788; Matter of Barrett, 132 App. Div. 134, 116 N. Y. Supp. 756; King v. Strong, 9 Paige, 94.

Decreed accordingly.