part of the defendant in the management of the manufacture and sale of said Mexican Mustang liniment.

"Seventh. That plaintiffs have such other and further and general relief in the premises as to the court may seem just."

The subject-matter is a claim for royalty upon the sales of a proprietary medicine, payments to be made annually. The plaintiffs claim they should have had more money than was remitted to them for the fiscal year ending July, 1914, although they allege in their complaint no tortious wrong or breach of contract. The complaint does not state facts upon which the court could render judgment:

"That the defendant be excluded from a vested or contingent interest in or lien upon specific real or personal property within the state, or that such an interest or lien in favor of either party be enforced, regulated, defined, or limited, or otherwise affecting the title to such property."

The complaint states no cause of action against a nonresident of which the courts of this state could take cognizance without acquiring jurisdiction of his person by his voluntary appearance or by personal service of the summons upon him within the state. Sections 438, 439, Code of Civil Procedure; Pennoyer v. Neff, 95 U. S. 714, 727, 24 L. Ed. 565; Bryan v. University Pub. Co. of N. Y., 112 N. Y. 382, 19 N. E. 825, 2 L. R. A. 638; Ward v. Boyce, 152 N. Y. 191, 196, 46 N. E. 180, 36 L. R. A. 549; Von Hesse v. Mackaye, 55 Hun, 365, 8 N. Y. Supp. 894, affirmed 121 N. Y. 694, 24 N. E. 1099.

The part of the order denying defendant's motion should be reversed, with $10 costs and disbursements, and the defendant's motion granted, with costs.

---

In re BRANN.

In re LEAVITT'S WILL.

(Supreme Court, Appellate Division, First Department. March 3, 1916.)

1. WILLS ⬤⇒570—CONSTRUCTION—SPECIFIC LEGACIES—CHANGE OF FORM.
　　A testatrix gave 30 shares of stock in the S. Co., constituting practically all of her property, when the will was made, and then worth about $19,000, in trust for a brother during his lifetime, and upon his death directed that it be sold and the proceeds divided, and then bequeathed the residue of her estate by a residuary clause, which was almost purely formal, there being practically no property undisposed of. Thereafter the S. Co. was declared an illegal combination, because of its control by means of stock ownership of subsidiary companies, and it accordingly distributed the stock in such companies among its stockholders, thereby reducing the value of its own stock. The stockholders were also given pre-emptive rights to purchase new stock in such companies, which the testatrix exercised, borrowing $600 for that purpose. At a time when this new stock was worth about $1,700 the testatrix executed a codicil, making specific bequests of small sums of money amounting to $1,700. After her death the stock in the S. Co. sold for about $12,000, and the distributed stock in the subsidiary companies for over $18,000. Held, that this distributed stock passed under the bequest of the stock in the S. Co., as it was not a reasonable construction of the testamentary acts of the testatrix to impute to her an intent to reduce a gift of $19,000 to about $12,000, while leaving property worth $18,000 to pass to a residu-

ary legatee originally given merely illusory benefits, while if the nature of the property, rather than the intent of the testatrix, was considered, the new shares represented merely a changed form of the shares bequeathed.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1243; Dec. Dig. ☞570.]

2. WILLS ☞753—CONSTRUCTION—SPECIFIC LEGACIES.

A specific bequest is construed with reference to the situation at the time of the drawing of the will.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1939–1944; Dec. Dig. ☞753.]

3. WILLS ☞439—CONSTRUCTION—FOLLOWING INTENTION.

The controlling factor in the construction of a will is the intent of the testator, if expressed.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 952, 955, 957; Dec. Dig. ☞439.]

Page and Davis, JJ., dissenting.

Appeal from Surrogate's Court, New York County.

Proceeding for the judicial settlement of the account of John A. Brann as sole surviving executor of Alice Victorine Leavitt, deceased. From a portion of a decree construing the will and directing a distribution of the estate of the decedent, Leavitt, Bessie R. Johnston appeals. Affirmed.

See, also, 86 Misc. Rep. 609, 148 N. Y. Supp. 758.

Argued before CLARKE, P. J., and DOWLING, SMITH, PAGE, and DAVIS, JJ.

George H. Richards, of New York City, for appellant.

Joseph Fennelly and Joseph H. Fargis, both of New York City, for respondents.

SMITH, J. [1] The will of the testatrix among its provisions contained the following:

"Seventh: I give and bequeath to my executors hereinafter named the 30 shares of stock of the Standard Oil Co., owned by me, in trust to receive the income thereof, and apply $600 per annum of the same in monthly installments of $50.00 per month to the use of my brother Alexander Leavitt of Oka, Canada, during his life, and I authorize and empower them to increase the sum of said payments if in their discretion they deem it necessary owing to his serious and prolonged illness or other grave cause.

"Eighth: Upon the death of my said brother I direct that the thirty shares of Standard Oil Co. stock aforementioned be sold and the proceeds divided in the manner following, together with whatever income may have accumulated thereon after the payment of the annuity as directed in clause seventh of this will. * * *

"Ninth: All the rest, residue and remainder of my estate, including any legacy which may lapse or be void, I give and bequeath to Mrs. Roy Johnston. * * *"

At the time of making the will practically all of the property the testatrix owned was the 30 shares of the stock of the Standard Oil Company of New Jersey (then valued at about $19,000), and this stock she continued to hold until her death. But intermediate the execution of her will and her death the Standard Oil Company was

declared an illegal combination by reason of the fact that it controlled by stock ownership many subsidiary companies. To remedy this situation the company distributed among its stockholders pro rata the stock which it held of these subsidiary companies, and the testatrix, by reason of her ownership of the 30 shares of Standard Oil stock, received certain of these distributed shares. The value of the 30 shares of Standard Oil Company of New Jersey was thereby reduced, so that after her death it realized on a sale only $12,734.40, and the shares received by her on the distribution sold for $18,872.47.

This appeal is from that portion of the decree which holds that the proceeds of these shares of the subsidiary companies belong to the legatee of the 30 shares.

[2] The bequest of the thirty shares was specific, as it refers to "the thirty shares of stock of the Standard Oil Company owned by me." A specific bequest is construed with reference to the situation at the time of the drawing of the will. Matter of Delaney, 133 App. Div. 409, 117 N. Y. Supp. 838, affirmed 196 N. Y. 530, 89 N. E. 1098.

[3] It is, of course, axiomatic that the controlling factor in the construction of a will is the intent of the testator, if expressed, and therefore, if any such expressions of intent are present in this will or codicil, they must govern.

It appears that at the time of the execution of the will the testatrix disposed of practically her entire estate by means of specific legacies, leaving the residuary clause almost a purely formal part of the will. After the distribution of additional shares the testatrix also was entitled to pre-emptive rights to purchase new stock in certain of the subsidiary companies. She exercised these rights, and the stock realized on the administrator's sale about $2,000. On September 18, 1912, the testatrix executed a codicil of her will making specific bequests of a portrait and of small sums of money amounting in all to $1,700. At the time of the execution of this codicil the stock purchased under the rights was valued at about $1,700. In order to make the purchase of these stocks, the testatrix borrowed $600 on a note. The amount of the legacies contained in this codicil so closely approximates the value of the stock purchased under the above-mentioned rights that the indications seem to be that the codicil was intended as a disposition of this undisposed of portion of her estate. There will remain a surplus of $438.14 out of the proceeds of this purchased stock after satisfying the legacies in the codicil, and this, added to about $200 cash, which she had in banks, will meet the $600 note. It would seem fair to assume that the testatrix regarded the $1,700 of stock as a part of her capital which she would leave at her death, and that she contemplated meeting the $600 note which she made to enable her to purchase this capital out of her current income prior to her death. In any case it hardly seems that this item of a $600 note should be allowed great weight in ascertaining the testatrix's intent with regard to the disposition of $18,000 of her estate. The expenses of administration do not seem to have been provided for by leaving any undisposed of residue under the original will, and so it hardly seems that the necessity of their satisfaction should be considered in respect of

the codicil for the purpose of discovering the testatrix's intention. On the whole, it would seem that a reasonable construction of the testatrix's testamentary acts would be that which would not impute to her in the execution of her codicil an intent to leave undisposed of property to the value of about $18,000, which, if undisposed of, would go to a residuary legatee, who under the will was given merely illusory benefits, nor an intent to effect a reduction of a gift of $19,000 under the will to about $12,000 under the codicil.

If, however, in order to determine where the distributed shares should go, it should be necessary to rely on the nature of the property itself, unaided by deductions as to the intent of the testatrix as disclosed by her testamentary acts, the question will then be whether the new shares represented merely a changed form of the 30 shares as they stood at the time of drawing the will or whether they represented income consequent on the ownership of the 30 shares. It is claimed that the distributed shares were dividends, since they were a portion of the surplus of the company. If all distributions of surplus among stockholders are dividends, then these were such in form; but in view of the reason for the distribution, and the situations before and after it, I do not think that fact determinative. The stockholders in the Standard Oil Company, of which this testatrix was one, were, if the corporate fiction be laid aside for a moment, owners of all the company's property, including these shares, and through the ownership of these shares owners of the property of the subsidiary companies also. The form of corporate organization was a mechanism simply. This mechanism resulted in illegality, and it was discarded to the extent of making the ownership more direct by transferring the shares of the subsidiary companies from the Standard Oil Company to the shareholders in that company, who had been their real owners all along. Thus, where the ownership had previously been evidenced by the 30 shares of the Standard Oil stock, it was evidenced after the distribution by the 30 shares together with the distributed shares. The change was purely formal from the point of the ultimate ownership, and so, when the testatrix bequeathed the 30 shares of Standard Oil stock, she in effect bequeathed also the shares in question of the subsidiary companies. Brundage v. Brundage, 60 N. Y. 544, is in no way in point, as there the bequest was clearly not specific, but general. Of course, the principle above outlined does not apply to ordinary dividends, as they merely represent current income, and when they are paid they fall as a matter of course into the general estate, irrespective of their source.

The decree is affirmed, with costs to the respondents appearing separately and filing briefs on this appeal. Order filed.

CLARKE, P. J., and DOWLING, J., concur.

PAGE, J. (dissenting). The question involved on this appeal is one of law as to the construction of the will of the deceased and the distribution of the estate in accordance with the construction adopted. Practically all the property of which Alice Victorine Leavitt was pos-

sessed at the time of the execution of her will was 30 shares of stock of the Standard Oil Company of New Jersey. In regard to that her last will and testament provided as follows:

"Seventh. I give and bequeath to my executors hereinafter named the 30 shares of the Standard Oil Company owned by me, in trust to receive the income thereof and apply  *  *  *  to the use of my brother Alexander Leavitt,  *  *  *  during his life.  *  *  *

"Eighth. Upon the death of my said brother I direct that the 30 shares of Standard Oil stock aforementioned be sold and the proceeds divided in the manner following, together with whatever income may have accumulated thereon after the payment of the annuity as directed in clause seventh of this will."

Then follow three separate bequests of sums of money, and the will continues:

"D. All the rest, residue and remainder of said trust fund, after payment of the foregoing legacies shall be divided into two equal portions. I give and bequeath to the Home for the Aged of the Little Sisters of the Poor of the City of New York one of said portions.

"E. The remaining portion I give and bequeath to the College of St. Francis Xavier.  *  *  *

"Ninth. All the rest, residue and remainder of my estate, including any legacy which may lapse or be void, I give and bequeath to Mrs. Roy Johnston.  *  *  *"

Subsequent to the execution of the will, and on April 2, 1911, Alexander Leavitt died. On May 15, 1911, the United States Supreme Court (Standard Oil Co. v. United States, 221 U. S. 1, 31 Sup. Ct. 502, 55 L. Ed. 619, 34 L. R. A. [N. S.] 834, Ann. Cas. 1912D, 734) modified and affirmed the decree of the lower court pursuant to which the Standard Oil Company of New Jersey on December 1, 1911, distributed to its stockholders an equivalent proportion of the stock of its various subsidiary companies. The testatrix did not surrender her said 30 shares of Standard Oil Company of New Jersey stock, but under said decree received in addition various shares and fractional shares of stock in the subsidiary companies proportionate to her holdings of Standard Oil Company of New Jersey stock. On September 18, 1912, testatrix executed a codicil to her will, by which she made a specific legacy of a portrait, certain bequests aggregating $1,700, and in all other respects ratified and confirmed the will.

Between the date of the distribution of the stock pursuant to the decree and the date of testatrix's death, December 29, 1912, she exercised the right to subscribe for and purchase stock which was given to the stockholders of Swan & Finch Company, Vacuum Oil Company, and Standard Oil Company of California. This stock, with the dividends thereon, sold for $2,138.44. To make this purchase she borrowed on her note the sum of $600 from the German Bank of Louisville, Ky., which note was outstanding and unpaid at the date of the death of the testatrix.

As to the ordinary dividends received during the testator's lifetime on the original 30 shares and the dividends (ordinary, extraordinary, or stock) of the subsidiary companies the disposition by the surrogate is not questioned upon this appeal. The learned surrogate has found, however, that the bequest of the 30 shares of stock in the Standard

Oil Company carried with it the shares of stock of the subsidiary companies awarded upon the distribution made by the Standard Oil Company in December, 1911. This decision was first made in the transfer tax matter, and has been adhered to in the accounting proceeding. This construction practically eliminates the codicil to the will, and the reason that the legatees of the codicil are not appealing is disclosed by the petition—that the executor has an agreement with the Home for the Aged of the Little Sisters of the Poor and the College of St. Francis Xavier, consenting to the payment of these legacies, and that each of such beneficiaries of the trust will allow half of the amount required for such payment to be deducted by the executor from the amount of the trust fund to which each is entitled.

In the construction of a will the first and all-important consideration is to ascertain the intention of the testator, and to give effect to each provision and to every word used if it be possible. When, therefore, the result reached by a given construction renders nugatory certain clearly expressed provisions of the will, there is a wrong result, which demonstrates a wrong construction. The fact that after the death of her brother, and after she had received the stock in the subsidiary companies, she made a codicil to her will, containing certain pecuniary bequests, that could only be paid out of the proceeds of that stock, demonstrates that it was not her intention that the subsidiary stock was to be considered as a part of the original 30 shares.

It is urged that, as the stock she purchased cost her a trifle over $1,700, she expected the legacies to be paid out of this stock, and not out of the stock of the subsidiary companies. She knew, however, that she had become indebted to the extent of $600, which, with interest, would have to be paid together with the expenses of administration. Experience has demonstrated that not one dollar of the proceeds of this stock is available for the payment of the pecuniary legacies given by the codicil. While it is true that as to a specific bequest the will is deemed to speak as of the time of its execution (Matter of Delaney, 133 App. Div. 409, 117 N. Y. Supp. 838), and, had the Standard Oil Company of New Jersey been reorganized, these specific 30 shares of stock surrendered, and other shares issued in lieu thereof, undoubtedly, the substituted shares would have passed under the specific bequest (Mallam v. McFie, 81 L. J. Ch. 220; Turner v. Leeming, 81 L. J. Ch. 453; Blair v. Scribner, 65 N. J. Eq. 498, 57 Atl. 318, 328).

That, however, is not the present case. There has been no change of identity, the same 30 shares of stock that were specifically bequeathed were in existence, and could be applied to the satisfaction of the legacy. The making of the codicil is a republication of the will, and carries forward its date of execution to the date of the codicil, and the testatrix must be deemed to have spoken as of the date of the codicil. Viewed in this light, it is clear that it was her intention that 30 shares should still be applied as directed in the seventh and eighth clauses of the will, but that the stock in the subsidiary companies should be applied in satisfaction of the pecuniary legacies, and if there was anything remaining it would by force of the will pass under the residuary

clause. It is conceded that the stock dividends so passed. The learned counsel for the respondent argues that this follows because a dividend is the voluntary act of the directors, while the distribution of the stock of the subsidiary companies was an involuntary act, compelled by the decree of the United States court. The action of the directors of the corporation in making the distribution is not the question to be considered; but the intention of the testatrix in disposing of the property which she had received and the operation of the law upon the property in her possession are the questions to be determined.

The case of Brundage v. Brundage, 60 N. Y. 544, was an action to construe a will. The will bequeathed 10 shares of New York Central Railroad Company stock to the testator's daughter and 20 shares of such stock to his wife for her sole use during life. Said company, after the execution of the will and before the testator's death, issued to its stockholders what were styled "interest certificates." By their terms they were made assignable, and payable at the option of the company out of future earnings, with dividends thereon, or convertible into stock. It was held that the legatees took the specific number of shares of stock as they were at the time of the testator's death, and could claim no right to, or interest in, the certificates; that, having been issued to and received by the testator, they became an independent part of his estate, and passed by the residuary clause of the will, and the court said (page 549):

"If dividends, * * * then, as dividends, they belonged to the stockholder owning the shares upon which they were paid; paid, to be sure, as something growing out of his stock, but instantly, when paid, separable from and independent of it, as much so as though paid in money and appearing in his assets as a deposit to his credit in his bank account. If not dividends, * * * then by their terms they were transferable by the holder, and by their terms, and by the necessary legal effect of them, an independent thing of value, not a part of the stock, nor in any ways attached thereto, or accompanying it."

There can be no question but that the stock in the subsidiary company was an independent thing of value in the hands of the testatrix in her lifetime, and that she could have sold or given it away. If she had sold it, and deposited the money in her bank account, it hardly seems credible that any one would have claimed that the money would have passed under the specific legacy of 30 shares of stock. Nor in my opinion was there any guaranty that the stock should not be diminished in value by a distribution of surplus profits intermediate the making of the will and the death of the testatrix. The 30 shares of stock sold for $12,734.40, or at 4¼ times its par value. Therefore, after the distribution of the stock of the subsidiary companies, the surplus remaining amounted to $325 on each $100 share of the Standard Oil stock. It is conceded that if the company had distributed so much of the surplus as a dividend, and delivered this stock, which was a part of the surplus, as was done by the Union Pacific under like compulsion of the federal courts, the stock would have become a part of the general estate, and not attached to or accompanying the shares mentioned in the specific legacy. To my mind, the method of distribution of the surplus, whether it be called a dividend or not, has

no bearing on the case. If it did, to my mind, the controlling fact would not be the question of the intent of the directors, but the intention of the court in ordering the distribution and that was clearly that the holding of these shares in the subsidiary companies was illegal, and therefore that the Standard Oil Company should no longer hold it as a part of its surplus, but should segregate these shares and effectually dispose of them. To now hold that, nevertheless, they remained attached to and passed as an incident with the transfer of the stock of that company is to go counter to that decision.

I am of opinion that the stock of the subsidiary companies, when issued and received by the testatrix, became an independent asset of the estate, not in any way attached to or accompanying the original stock; that it was the intention of the testatrix to have the legacies of the codicil paid out of the proceeds of the subsidiary stock; and that the 30 shares of stock of the Standard Oil Company of New Jersey passed under the eighth clause of the will to the Home for the Aged of the Little Sisters of the Poor and St. Francis Xavier College, and that, after paying debts, executor's commissions, and the expenses of administration, whatever is left passes to the residuary legatee.

In my opinion the decree of the surrogate should be reversed and the matter remitted.

DAVIS, J., concurs.