In the Matter of the Estate of Dora Rubinstein, Also Known as Dora Rubenstein, Deceased.

Surrogate's Court, Kings County, October 18, 1938.

*Copal Mintz*, for the executors, petitioners.

*Blum & Jolles*, for the Consul General of the Republic of Poland, acting on behalf of Chajena Finkelstein and Esther Rotman, objectants.

*William C. Chanler, Corporation Counsel*, for the City of New York, claimant.

*Jacob Manheim*, for the Yeshivath Tipereth Jerusalem, legatee.

*Strongin & Schwartz*, for the Brooklyn Hebrew Home and Hospital for the Aged, legatee.

*William Weintraub*, for The Hebrew Institute of Boro Park, legatee.

Wingate, S.    The principal question for determination upon this accounting is as to whether, under the facts of this case, the bequest made by the " fourth " item of the will of this decedent was adeemed.    The pertinent language of the will reads:

"*Fourth.*    I hereby direct that my executors dispose of the moneys that remain on deposit in the Bay Parkway National Bank, as follows:

" Three hundred ($300.00) for a suitable headstone, and the balance remaining on deposit in the said Bay Parkway National Bank, to be equally divided between my cousins Chajena Finkelstein and Esther Rotman, both residing in Ostrolenka Ropernik #4, Lonza Guberna, Poland. In the event that any of my said cousins should predecease me then said share is to go to their children, share and share alike."

The facts upon which the question is submitted for decision are recited in Schedule H of the account. It there appears that on the date of execution of the will, which was March 20, 1930, the decedent had the sum of $403.99 on deposit with the Bay Parkway National Bank and thereafter made two additional deposits in the account, with the result that on May 28, 1931, its total was $765.07. The bank went into liquidation on the latter date and was absorbed by Lafayette National Bank which continued business at the same address. On July tenth the decedent was paid the total of her balance with the Bay Parkway National Bank, namely, $765.07, by its liquidator and deposited this sum together with an additional $84.93 with the Lafayette Bank, making a total credit to her account with the latter institution of $850. On July 13, 1931, the decedent withdrew the total credit of $850 from the Lafayette Bank and on the same day opened an account in like amount with the South Brooklyn Savings Bank. This account remained open to the date of testatrix's death, at which time it showed a balance of $1,453.21. Subsequent to the closing of the Bay Parkway and Lafayette accounts, the testatrix executed two codicils, neither of which altered the gift originally made by item " fourth " of the will.

It is the position of the executors that as a result of the foregoing facts, the legacy under the " fourth " item was adeemed. This conclusion is opposed by the Polish Consul on behalf of his nationals.

It is, of course, obvious, and is conceded by all parties, that the gift under the item in question is a specific legacy being " a bequest of a specified part of testator's personal estate distinguished from all others of the same kind " (*Crawford* v. *McCarthy*, 159 N. Y. 514, 519; *Matter of Anable*, 139 Misc. 914, 917), which definition has been determined to be broad enough to embrace a gift of a part or the whole of a described bank account. (*Crawford* v. *McCarthy*, 159 N. Y. 514, 521; *Matter of Barry*, 138 Misc. 519, 520; *Matter of Corey*, 133 id. 199, 200; *Matter of Grinnell*, 115 id. 722, 723; *Larkin* v. *Salmon*, 3 Dem. 270, 272; *Matter of Baker*, 146 Misc. 437, 438; *Matter of Armstrong*, 160 id. 806, 809.)

The legal theory upon which this classification of such a gift is predicated in instances of gifts of all or a part of bank deposits

is not that the gift is one of a specific sum of money owned by the testator, since, for obvious reasons, no such ownership exists in such a situation. The bank is not a bailee of the money deposited. The deposit creates merely the conventional relationship of debtor and creditor between the bank and the depositor (*Matter of Egan*, 258 N. Y. 334, 339; *Genesee Wesleyan Seminary* v. *U. S. Fidelity & Guaranty Co.*, 247 id. 52, 55; *Baldwin's Bank* v. *Smith*, 215 id. 76, 82), with the result that the obligation of the bank to the depositor becomes merely a chose in action in the possession of the latter (*Matter of Delaney*, 256 N. Y. 315, 320) which differs in no respect from any other similar right which he possesses. (*Matter of Baker*, 146 Misc. 437, 439.)

It is apparent, therefore, that the basic conception underlying the specific nature of a gift of a named bank account is not that asserted by the representative of the respondents " of a sum of money in a bag, or in a chest, or in a safe deposit vault," nor does the sole New York authority cited in support of this position (*Beck* v. *McGillis*, 9 Barb. 35) give any semblance of support for such a doctrine. Such would, unquestionably, be the result were the extreme rarity of a special deposit, which is a pure bailment only (*Carlson* v. *Kies*, 75 Wash. 171, 174; *Marine Bank* v. *Fulton Bank*, 2 Wall. 252, 256; *Von Wagoner* v. *Buckley*, 148 App. Div. 808, 811; *Matter of McCarthy*, 139 Misc. 147, 150; *Matter of. Kruger*, Id. 907, 910), to be made; since, however, there is no intimation in the present case that anything other than a general deposit was here effected its gift amounted to no more than the bequest of any other obligation due to the testatrix from an identified obligor.

The respondent's position in the present case is primarily predicated on certain misconceptions of the law relating to the subject of ademption of specific testamentary gifts and to the somewhat common error despite innumerable judicial admonitions to the contrary (*Matter of Watson*, 262 N. Y. 284, 297; *Matter of Bump*, 234 id. 60, 63; *Matter of Rossiter*, 134 Misc. 837, 839; affd., 229 App. Div. 730; affd., 254 N. Y. 583: *Matter of Weissmann*, 137 Misc. 113, 114; affd., on opinion of this court, 232 App. Div. 698; *Matter of Montgomery*, 166 Misc. 347, 349), of reliance upon the interpretations attained by other courts in respect of the language of other wills which possessed features differing from the pertinent direction incorporated in the will at bar.

The principles respecting the ademption of specific testamentary gifts are clearly and firmly established in the law. "*Ademption* * * * is only predicable of a specific legacy. It takes place, as the term imports, when the thing which is the subject of the legacy is *taken away*, so that when the testator dies, though the

will purports to bestow the legacy, the thing given is not to be found to answer the bequest. It has been extinguished, if a specific debt, by having been paid to the testator himself; if an article of property, by its sale or conversion." (*Beck* v. *McGillis*, 9 Barb. 35, 56.) " Unless the subject of a specific legacy exists, unchanged in substance, at the date of the will, there results an ademption, complete or partial according to the facts." (*Matter of Brann*, 219 N. Y. 263, 267, revg. *Matter of Leavitt*, 86 Misc. 609.)

Whether or not an ademption has occurred in any given instance is a question of pure law on the facts of the case, with which the intention of the testator has nothing whatsoever to do. This principle has been emphasized in innumerable authoritative pronouncements extending back over a century or more. Thus it was said in *Beck* v. *McGillis* (9 Barb. 35, at p. 59): " All these cases unite in asserting the rule, that if a specific legacy do not exist at the death of the testator, it is adeemed. It is a rule which prevails, without regard to the intention of the testator, or the hardship of the case. In this very case, there can be no doubt, that the real purpose of the testator will be defeated, and the ademption of the legacy will operate as a hardship upon the legatee. But the law is too firmly settled to admit of relaxation, however peculiar or pressing the circumstances. The thing given is gone, and no court is at liberty to substitute a different thing for that which the testator had himself given."

The doctrine of this decision was quoted and applied by the Appellate Division in *Ametrano* v. *Downs* (62 App. Div. 405) which course received the express and unqualified approval of the Court of Appeals in the same case (*Ametrano* v. *Downs*, 170 N. Y. 388, 391). The language of the Appellate Division in that connection reads (at p. 408): " ' This,' to quote the court in the case of *Beck* v. *McGillis* (9 Barb. 35, 57), ' is ademption — whether or not it has taken place is a conclusion of law, and does not depend upon the intention of the testator.' When the question is settled, and it is determined that the testator intended to give a specific thing and not a general legacy, then the intention of the testator has nothing further to do with the question of ademption. This is entirely a rule of law, and the rule is that the legacy is extinguished if the thing given is gone." Finally, in this connection, the Court of Appeals states in *Matter of Brann* (219 N. Y. 263, 268): " It was once thought that ademption was dependent on intention, and ' it was, therefore, held in old days that when a change was effected by public authority, or without the will of the testator, ademption did not follow. But for many years that has ceased to be law.' * * * It has ceased to be law in England * * *.

It has ceased to be law in New York * * *. What courts look to now is the fact of change. That ascertained, they do not trouble themselves about the reason for the change."

It will be obvious from these statements of basic principles that the determination of any issue of ademption of a specific testamentary gift involves two and only two inquiries, namely, *first*, as to the identity of the particular specified item which the testator purported to give; and, *second*, as to whether a thing answering to the description of such donated item belonged to him at the time of his death. The first question is purely one of the interpretation of the language purporting to effect the particular gift. The second is mainly a question of fact involving a comparison of the assets of which the testator died seized and possessed with the description of the item which was specifically given.

In the first determination it is to be recalled that " The presumption is that in a will of personal property the intention of the testator is that the will shall speak as of the time of his death, but this presumption in the case of specific legacies may be rebutted when the nature of the property or thing bequeathed, or the language used by the testator in making the bequest, indicates that he intended it to speak as of the time of making the will. * * *

" That a legacy of the ' contents ' of a safe deposit box, a desk or a chest, plainly means whatever might be therein at the time of the death of the testator has been generally held. * * * If the contents of the box are specifically mentioned, and merely described as being in the box, and the language of the will does not localize the subject of the legacy, it might be immaterial whether the articles thus mentioned remained in the box or not." (*Matter of Thompson*, 217 N. Y. 111, 115; to identical effect, see *Waldo* v. *Hayes*, 96 App. Div. 454, 456; *Gardner* v. *Printup*, 2 Barb. 83, 87.)

The extreme importance of a careful analysis of the language of the particular gift is emphasized by the diverse results attained in *Gardner* v. *Printup* (2 Barb. 83) and in *Beck* v. *McGillis* (9 id. 35). In the former, in which the bequest was of " the *proceeds* of a bond and mortgage I hold against Aaron Briggs," it was held that another bond and mortgage received by the testator upon a resale of the securing property after it had been retaken by him because of default in compliance with the terms of the mortgage, would be delivered to the legatee in satisfaction of the specific gift. In the latter, the gift was of a specified bond and mortgage made by one Buel. The testator foreclosed the mortgage and the property was sold to another, who gave the testator a new purchase-money mortgage. In determining that the specific legatee was not entitled to receive the new mortgage, and that the legacy had

wholly abated, the court said (at p. 58): " The bequest is of that peculiar debt, and not of a sum of money to be paid out of that debt. Had the testator received payments upon the bond and mortgage, such payments would have constituted an ademption *pro tanto*. The balance, if he had still retained the bond and mortgage, when he died, would have passed to the legatee. But the debt bequeathed was, in fact, fully paid to the testator. The bond and mortgage were satisfied by the foreclosure sale. The thing bequeathed was gone, and the legacy was adeemed. The fact that the same money which satisfied Buel's debt has been invested in a new security upon the same property, cannot operate to save the legacy. Whether the testator was paid in money or a new security, or whether such payment was invested in another bond and mortgage, upon the same or other premises, cannot affect the right of the parties. In either case, the thing described in the will, and for which the legacy calls, no longer exists. The legacy is therefore adeemed."

After the identity of the particular object or item of property intended to be given has been ascertained, the final step of analysis of the assets of the decedent at the time of his death is to be undertaken. In this connection, four situations are possible, namely, *first*, the object or item given may have been totally aliened or destroyed; *second*, an item of the description of the thing given may have been owned by the testator at the time of his death; *third*, such described item may still be in existence but its value may have varied either beneficially or the reverse in the interval between the date of the will and the time of death; and, *fourth*, the particular thing owned at the time of the execution of the will may have passed from the ownership of the testator but its proceeds may be traceable into some other possession constituting an asset of the deceased. The first situation presents no difficulty. If the object given is not in the possession of the testator and no substantially similar item of property has been acquired to replace it, the legacy is adeemed or the devise revoked, depending upon whether the subject-matter of the gift was personal or real property. The determinations of the courts to this effect are uniform and unequivocal. (*Matter of Ireland*, 257 N. Y. 155, 158; *Ametrano* v. *Downs*, 170 id. 388, 391; *McNaughton* v. *McNaughton*, 34 id. 201, 206; *Matter of Sinnott*, 163 App. Div. 817, 818; affd., 214 N. Y. 667; *Philson* v. *Moore*, 23 Hun, 152, 155; *Walton* v. *Walton*, 7 Johns. Ch. 258, 267; *Newcomb* v. *Trustees of St. Peter's Church*, 2 Sandf. Ch. 636; *Beck* v. *McGillis*, 9 Barb. 35, 56; *Matter of Johnson*, 158 Misc. 340; *Matter of Snowden*, 137 id. 56, 57; *Matter of Bouk*, 80 id. 196, 202; *Hosea* v. *Skinner*, 32 id. 653, 655.)

The decisions respecting a situation in which property of the description of the thing specifically given is found in the estate of the decedent at the time of his death are also uniform to the effect that the donee is entitled to the gift (*Van Tassel* v. *Burger*, 119 App. Div. 509, 511; *Philson* v. *Moore*, 23 Hun, 152), and this, despite the fact that the particular item in question may not have been owned by the decedent at the date of the execution of the will (*Waldo* v. *Hayes*, 96 App. Div. 454, 456) or that his ownership thereof, in the interval, may not have been continuous. (*Brown* v. *Brown*, 16 Barb. 569, 575.) The pertinent principles in this regard are elucidated in *Waldo* v. *Hayes* (96 App. Div. 454, 456) as follows: " The courts of this State have uniformly held  *  *  * that as to personalty the will of a testator speaks as of the date of the death of the testator, and that any article of personal property which the testator owns at the time of his death, which answers to the description of an article bequeathed, passes under the will to the legatee named therein, although such article may not be the identical article owned by the testator at the time the will was executed."

The third possible situation, in which property of the description of the gift is still owned by the testator at the time of his death, but its value has increased or decreased in the interval subsequent to the execution of the will, is partly regulated by sections 38 and 39 of the Decedent Estate Law which provide that any incumbrance placed upon the subject-matter of a testamentary gift, or any conveyance thereof which is less than a complete divestment of the rights of the testator shall not effect a revocation of the testamentary gift, but the donee shall receive the subject-matter as thus incumbered, or the reduced interest of the testator, as the case may be. This enactment was taken from the Revised Statutes (R. S. pt. 2, chap. 6, tit. 1, art. 3, § 46) in which it was originally incorporated to overcome the result attained in *Walton* v. *Walton* (7 Johns. Ch. 258, 267, 273), decided in 1823, which whereas applying this rule in respect of legacies of personalty (p. 265) determined that the contrary was applicable to devises of real property.

It would appear to follow as a logical matter that if the specific donee is entitled to receive in its impaired condition the item of property which the testator purported to give him, he should also be entitled to any increment to its value which had occurred in the interval and such was the determination in *Walton* v. *Walton* (7 Johns. Ch. 258, 266), where the testamentary gift was of four shares of a specified stock, which, by a change in the corporate structure, had become six shares at the date of death. A like decision is found in *Matter of Blasius* (134 Misc. 753, 757), in which

the particular mortgage, which was the subject-matter of the bequest, had been increased by the testator in his lifetime. A similar result was also attained by the surrogate in *Matter of Leavitt* (86 Misc. 609), upon which, for some obscure reason, the present respondents rely as a pertinent precedent in this case. Its authority on the particular factual situation disclosed is somewhat impaired by its reversal by the Court of Appeals (*sub nom. Matter of Brann*, 219 N. Y. 263). The question there presented concerned the rights of a legatee of thirty shares of old Standard Oil stock to receive the stock of its subsidiary companies on their divorcement from the parent company, the surrogate and Appellate Division (171 App. Div. 800) deciding in the affirmative and the Court of Appeals in the negative.

Any question of this variety is obviously subject to determination in accordance with the language of the particular testamentary instrument, especially where, for example, the gift of a particular security is coupled with a specification of the number of units or face value thereof, as in the *Walton* case, where the gift was of testator's interest in his four shares of Western Island Lock Navigation Company stock. In such a situation the issue becomes one of interpretation, as to whether the testator intended to make a gift of his stock in its entirety or whether the financial specification was a controlling factor in his mind.

The final, and most difficult situation is presented by a demonstration that the particular subject-matter of the specific gift was no longer in the possession of the testator at the time of his death but that it had been replaced by another asset to which the donee lays claim and into which the specifically given item is traceable. An intimation respecting the proper solution of such a problem is found in *Matter of Brann* (219 N. Y. 263), in which the court observes (at p. 267): " A change in the nature of the property works an ademption unless it is a change ' in name or form only.' * * * It may be that where the change is merely formal, as where a company is reorganized and there is a reissue of the shares, the identity of the gift will be held to be substantially preserved."

This is to be read in conjunction with the statement in *Matter of Ireland* (257 N. Y. 155, 158): " In the absence of statute there is no power in the courts to change a specific into a general legacy or turn over the balance of the proceeds derived from the sale of the specific property to the legatee in place of the particular thing intended to be given." (To like effect see *Beck* v. *McGillis*, 9 Barb. 35, 58.)

The cases in which an item of property into which the proceeds of the specifically given property have been traced, has been awarded

to the donee, demonstrate that the close limitation noted in *Matter of Brann* (*supra*) in respect of the permissibility of the adoption of such a course of procedure has been strictly observed. All decisions of this variety in this State which the research of the court has disclosed have been by courts of first impression and none have been subjected to appellate scrutiny. They are five in number. In *Matter of Howard* (46 Misc. 204) the gift was of money on deposit in a named savings bank.

The bank went into liquidation with a trust company as receiver and the latter placed the testator's liquidating dividend to his credit on its own books and issued a pass book to him. He withdrew a part and it was held that the remainder devolved to his specific legatee on his death. In *Matter of Adams* (90 Misc. 254) the testatrix bequeathed shares in two affiliated companies which were subsequently combined and the legatee was awarded the shares which the testatrix had received in the consolidated enterprise. In *Pruyn* v. *Sears* (96 Misc. 200) the bequest was of thirty shares of Sears & Pruyn Company. This was reorganized with the same assets and business as Sears & Pruyn, Inc., and the exchanged shares were held to pass to the legatee. The bequest in *Matter of Bradley* (119 Misc. 2) was of testator's stock in the " National Bank of Walden." The charter of this institution expired and a new corporation, known as " Third National Bank of Walden," was organized which took over the assets and business. The testator accepted shares in the new corporation in exchange for his former holdings and these were held to devolve to the legatee. The final case of this variety is *Matter of Spears* (151 Misc. 181) in which the testatrix expressed a wish that her brother should receive the securities which she had received from their mother. These were described as those of a certain railway company which had merged in another after the date of the will. The securities received by the testatrix on the merger in exchange for those formerly held were awarded to the legatee.

It is to be noted that in the first and last of the five cases just reviewed, the decision was primarily predicated on the description of the subject-matter of the gift, with the conclusion attained that the particular thing which the testator had in mind in making the gift was still actually in existence at the date of death. With the exception of the first, they are all strictly within the limitation expressed in *Matter of Brann* (*supra*) as the permissible extent of substitution.

All other authorities which have been found have declined to award to the legatee the substitute property into which the proceeds of the specifically given item have been traced. The most common

example of this variety concerns specifically devised realty sold by the testator. The denial of award to the devisee of the purchase-money mortgage received on such a sale has been uniform. (*McNaughton* v. *McNaughton,* 34 N. Y. 201, 206; *Matter of Sinnott,* 163 App. Div. 817, 818; affd., 214 N. Y. 667; *Beck* v. *McGillis,* 9 Barb. 35, 56; *Matter of Bouk,* 80 Misc. 196, 202.) The same result was attained where the specifically devised realty was sold and the proceeds invested in identified personal property which was in testatrix's possession at the time of her death. (*Philson* v. *Moore,* 23 Hun, 152, 155.)

Three additional decisions demonstrate the strictness with which the rule of ademption is applied by the courts. In *Matter of Johnson* (158 Misc. 340) the bequest was of testator's book accounts. Shortly prior to his death, he sold them on an agreement for payment in installments. It was held that the legatee was not entitled to receive the unpaid installments. In *Matter of Snowden* (137 Misc. 56) the testator accorded to his widow a right of occupancy of their home at Sands Point. Prior to his death this home was sold and another acquired at Southampton. It was held that the widow received no rights in the latter. Finally, the gift in *Hosea* v. *Skinner* (32 Misc. 653) was of testator's shares in the " Passaic Water enterprise." These were exchanged for bonds in the Passaic Water Company, and the gift was held to have been adeemed.

There remains for evaluation the decision of a vice-chancellor of New Jersey made in 1899 (*Prendergast* v. *Walsh,* 58 N. J. Eq. 149; 42 A. 1049), upon which the respondents place great reliance. The bequest there considered was " of my money now on deposit at " three named banks. It was demonstrated that the testatrix had withdrawn all money in these banks, had kept it wrapped in paper in specie and had redeposited the identical currency in another bank. The court in determining that the legatees were entitled to the avails of the later account, said (at p. 153): " It is true that the money did not exist in *specie* and would not again be delivered to her or her personal representatives in *specie,* yet, having put money there, which was still there as money, liable to be drawn as money, so she designated it as money. The thing she bequeathed she drew from the bank. It remained the identical thing bequeathed until disposed of in some way by her. She could have disposed of it by consuming it in living or turning it into other property, or devoting it to a purpose inconsistent with the bequest. She did neither of these things, but, on the contrary, took the specific thing which she got from the bank and kept it until April 1st following, and then, with a slight addition, placed it in the Hoboken bank. While by this deposit in this last-named bank she lost the

right to have the same money again in *specie*, she retained the right to have it as money or cash. If thereafter it was properly designated as money or cash it must be regarded as a part of the same cash which she had taken from the four banks. If the money remained practically the same money, then the removal of it from the place of its deposit did not amount to an ademption. *The place of deposit was merely used as descriptive of the thing bequeathed. It was used to identify the particular money given, and it is entirely settled that where the place is merely descriptive the removal of the things to another place is immaterial.*" (Italics not in original.)

The gist of the decision is contained in the foregoing italicized language. It was merely a particular interpretation of the peculiar language contained in the will in the light of the actions of the testatrix herself, to the effect that she intended the gift to be of money which she viewed in the same way as if it were contained in a safe deposit box or as if it had been turned over to the banks as a pure bailment. This is all that the determination imports as is demonstrated by the manner of reference thereto in *Matter of Thompson* (217 N. Y. 111, 115) where the court says: " If the contents of the box are specifically mentioned, and merely described as being in the box, and the language of the will does not localize the subject of the legacy, it might be immaterial whether the articles thus mentioned remained in the box or not. Thus in *Cunningham* v. *Ross* (2 Lee Ecc. Rep. 272) the testator gave to his widow all his bills, bonds, etc., belonging to him, lying in the lodgings he then possessed, and before his death left such lodgings, and in *Prendergast* v. *Walsh* (58 N. J. Eq. 149) testatrix bequeathed to her sisters her money on deposit in certain savings banks and afterwards moved the deposit to another bank, and it was held that the words of location were merely descriptive, that the legacy was specific and that the removal of the subject thereof from the place mentioned did not amount to an ademption."

The decision, accordingly, purports only to be a construction of the particular will then before the court, and a determination on the peculiar facts of the case that the thing intended to be given was still in existence at the death of the testatrix in spite of its removal to a different location, with the result that the gift was not adeemed. Like other decisions respecting testamentary interpretation, it possesses no persuasive authority where the language of the will and the surrounding circumstances are diverse.

In the will at bar the gift was of " the balance remaining on deposit in the said Bay Parkway National Bank." Nothing in the language of the will nor in the disclosed dealings of the testatrix with this account raises any inference that she regarded this deposit

other than as constituting the familiar and conventional relationship of debtor and creditor. The reiterated reference to that which shall "remain" or "remaining" in the account, is a strong indication that the gift was intended to speak only as of the date of death of the testatrix and negatives any probability that she contemplated the present gift of an existing unlocalized object. All which she may reasonably be deemed to have had in mind was that the amount which stood to her credit in the specified institution at her death, whether or not composed of any part of the credit which she possessed at the date of the execution of the will, should devolve to the named beneficiaries. As matters eventuated, there was no such credit at her death, since the total balance of the account was paid to her by the liquidator on July 10, 1933. The thing purported to be given was consequently extinguished and under controlling decisions there is an insufficient identity to warrant an award in lieu thereof of the asset into which the proceeds were traced, granting that such tracing is shown, which is denied by the executors. It follows that the gift to the Polish respondents under item "fourth" of the will must be held to have been adeemed.

Three claims recited in Schedule H of the account are submitted for adjudication as to their validity. That of Benjamin Rottenberg is stated to be predicated upon an agreement with the deceased, but no proof thereof has been tendered. Its allowance must be denied for failure of proof. An executor has presented a bill for three days' work lost at ten dollars a day by reason of attention to his executorial duties and five dollars and thirty cents for alleged disbursements. The former item is disallowed. The only compensation of executors is by way of statutory commissions. (*Matter of Hurley*, 149 Misc. 68, 69; *Matter of Goldberg*, 157 id. 49, 62.) In the event that he wishes to pursue his alleged and unconceded claim for disbursements, the items thereof must be proved pursuant to the provisions of section 212 of the Surrogate's Court Act. (*Matter of Gray*, 160 Misc. 710, 711.) The admittedly just claim of the department of city hospitals should be paid. The effect of its presentation is, however, to void the conditional bequest given by item "second" of the second codicil.

Enter decree on notice in conformity herewith.