In the Matter of the Accounting of Central Trust Company, as Executor of Warren R. Henderson, Deceased.

Surrogate's Court, Monroe County, February 3, 1950.

*Gerald R. Barrett* for executor, petitioner.

WITMER, S. In this judicial settlement proceeding the petitioner, as executor, asks for construction of testator's will to determine the extent of a devise of a farm in trust, specifically to determine whether or not a lot at the corner of Chili and Paul Roads in the town of Chili was included in such devise. It appears that such lot was a part of the farm as originally conveyed to the testator, and that after the date of the will he converted it into a gasoline station.

The testator executed his will in 1931 and died in 1947, in which year the will was probated. In paragraph " Second " thereof he provided in part as follows: " I give, devise and bequeath my farm located on Chili and Paul Roads, Chili Center, New York, and the house and lot across the road from said farm, together with all the personal property on said farm or used in connection therewith, to my trustee hereinafter named, in trust for the following uses and purposes: ", namely, for the testator's five children equally for the duration of the lives of his two youngest children and the survivor of them. It is acknowledged that the effect of paragraph " Third " of the will is to give the residue of the testator's estate absolutely to his five children equally.

It appears that for years prior to 1928 the testator had owned and personally operated the farm referred to in paragraph " Second " of his will. In 1928 he became Superintendent of the Monroe County Penitentiary, and went to live at the penitentiary. He never again operated the farm. His son, Warren Henderson, Jr., then assumed the operation of the farm and continued thereat until his death in 1938. After the testator's services as Superintendent of the Monroe County Penitentiary terminated in 1932, he lived in retirement on the farm, residing with his said son and two daughters in " the house * * * across the road ", as described in the will. At that time the area above referred to as the corner lot was used partly as a

garden spot and partly as lawn for the house on the farm proper. In 1938 the testator began to construct on said lot a building for a gasoline station and grease pit, and drew onto the lot many loads of gravel to raise the lot level and make driveways and parking areas thereon. He began to operate said gasoline station in February, 1939, and continued to operate it until his death. After the death of his son in 1938 the testator rented the farm to others to operate, but in the lease of the farm he always reserved the gasoline station property, which he never rented to anyone.

The question presented is whether the gasoline station property is included in the devise of " my farm " in trust for the children, or whether it passes to the children outright under the residuary clause in paragraph " Third ".

This is not a simple question. Neither counsel nor the court has found a precedent directly in point, although it seems that this question must have been before the courts on many occasions. It is an ademption problem, but the fact that the testator continued to own the gasoline station lot as well as the rest of the farm at the time of his death makes it less easy to so classify it.

The devise of the farm was specific, and at the date of the will it included the land upon which the gasoline station in question was constructed. With respect to specific gifts and devises a will speaks as of the date of its execution. (*Matter of Cameron*, 278 N. Y. 352, 360.) Where, however, the will contemplates the gift of property of a specified description whether or not it be the same property owned by the testator at the date of the will, the testator's intent controls, and such property owned by him at his death, though acquired after the date of the will, will be included in the specific gift. (*Matter of Thompson*, 217 N. Y. 111, 115; *Matter of Rubinstein*, 169 Misc. 273, 277–279; *Matter of Whitford*, 146 Misc. 82; 3 Butler on New York Surrogate Law & Practice, § 1953, p. 63.)

The testator's intention as disclosed in the will and his surrounding circumstances at the date thereof determine the meaning of his language, specifically, here, what area comprised the said " farm " at the date of the will. (*Pruyn* v. *Sears*, 96 Misc. 200; *Matter of Woggon*, 198 Misc. 590.) His original intention is also important in determining questions arising out of alterations in the subject of the gift. (*Matter of Thompson, supra*, 217 N. Y. 111; *Matter of Rubinstein*, 169 Misc. 273–280, *supra*; *Matter of Whitford*, 146 Misc. 82, *supra*; 2 Davids on New York Law of Wills, § 1121; 3 Butler on New York Surrogate Law and

Practice, § 1953.) Ademption, however is purely a question of law, and not of the testator's intention. (*Matter of Gilleland,* 186 Misc. 959, 962; *Matter of Rubinstein,* 169 Misc. 273, 276, *supra*). The intention referred to in this last instance, however, is that of the testator at the time of the alteration of the subject of the gift, not that existing at the time of the execution of the will.

In the case at bar the will speaks as of its date. There is nothing in the will to support more than a conjecture as to whether or not *at its date* the testator intended that any part of the farm which later and before his death might be appropriated for other purposes should be withdrawn from the devise. The positive valid devise in the will may not be rendered ineffective upon mere conjecture as to what the testator probably meant, to wit, to have only the farm as such held in trust for his children in order that they might share in the income therefrom. The gasoline station area must, therefore, pass to the trustee under paragraph " Second " of the will, unless as a matter of law the devise has been adeemed with respect to it.

In *Matter of Brann* (219 N. Y. 263, 267, CARDOZO, J.), the court said: " a change in the nature of the property works an ademption unless it is a change ' in name or form only ' ". Surrogate WINGATE, in *Matter of Rubinstein* (169 Misc. 273, 278, *supra*) analyzed this problem and stated: " In this connection, four situations are possible, namely, *first,* the object or item given may have been totally aliened or destroyed; *second,* an item of the description of the thing given may have been owned by the testator at the time of his death; *third,* such described item may still be in existence but its value may have varied either beneficially or the reverse in the interval between the date of the will and the time of death; and, *fourth,* the particular thing owned at the time of the execution of the will may have passed from the ownership of the testator but its proceeds may be traceable into some other possession constituting an asset of the deceased."

The situation at bar falls into the third category suggested by Surrogate WINGATE, to wit, where the subject of the gift is in existence but has undergone a substantial change in value so as to lose its original character.

It may be argued that since by statute (Decedent Estate Law, §§ 37–40; Real Property Law, § 250), a specific legatee or devisee is able to receive the gift, but reduced in value by certain acts of the testator, where the acts of the testator after the date of

the will enhance the value of the subject of the gift, the legatee or devisee should receive it with the increased value; and it has been so held in some cases. (*Matter of Blasius*, 134 Misc. 753, 757, and cases cited, and see *Matter of Rubinstein*, pp. 279–280, *supra*.) The extent of the change in value and character of the subject of the gift, however, is important, and is a deciding factor. Referring to the cases last mentioned, Mr. Bradford Butler (3 New York Surrogate Law & Practice, § 2148) says: "Any such result is, however, conditioned on the fact that the subject matter of the gift shall not have undergone any essential alteration in the process of enhancement in value." *Matter of Brann* (219 N. Y. 263, *supra*) supports this view.

Had the testator bequeathed the wheat in his granary, and thereafter and before his death milled half of the wheat into flour and then stored the flour with the wheat in the granary until his death, it could hardly be said that the flour answered the description of the gift of wheat so as to pass under such specific bequest. Had the testator bequeathed his sedan automobile, and thereafter and before his death converted it into a truck, it could hardly be said that the truck would answer the description of the sedan automobile referred to in the will. Such illustrations might be multiplied.

In the case at bar the testator devised his "farm". Insofar as the plot of ground used for the gasoline station is concerned, through change of its use and increase in its value, it had completely lost its original character as a farm or part of a farm, and ceased to exist. The loss of its identity resulted in an ademption of the devise in respect of the gasoline station property; and it therefore passes under paragraph "Third" of the will to the children.

Submit decree accordingly.