■ In the Matter of the Estate of ROBERT R. COLBERT, Deceased. THOMAS B. COLBERT et al., Respondents; CONSTANCE A. COLBERT et al., as Executrices of the Estate of ROBERT R. COLBERT, Deceased, Appellants. (And Another Related Proceeding.) [619 NYS2d 400] —Mercure, J. Appeal from an order of the Surrogate's Court of Tompkins County (Friedlander, S.), entered November 29, 1993, which, *inter alia*, granted petitioners' motion for summary judgment construing a will provision in their favor.

Robert R. Colbert (hereinafter the testator), a real estate developer in Tompkins County, executed his last will and testament on April 5, 1991. The will contained a provision, paragraph third, subparagraph L, wherein the testator bequeathed "the stock of any non-publicly traded corporation [that he] may own" to petitioners, two of his sons. The will named respondents, the testator's five daughters, as executrices.

At the time the will was executed, and at the time of the testator's death, he owned stock in several privately owned real estate corporations, including Concept Property Management Group, Inc., Technical-Professional Facilities, Inc. and Integrated Property Systems, Inc. The testator had sold all of his shares in INSTL Equities, Inc. (hereinafter INSTL) to petitioners and Philip Proujansky, the petitioner in the related proceeding, in October 1989. Because Proujansky apparently ran into financial difficulties, he agreed to sell his 3⅓ shares of INSTL to the testator and another individual for $240,000 in August 1991. The agreement further provided that Proujansky had an option to repurchase the shares within one year for $280,000. Pursuant to the August 1991 agreement, the testator was issued and received 1⅔ shares of INSTL stock in return for $120,000 which the testator borrowed on an unsecured basis.

The testator died on September 6, 1991 and testamentary letters were issued to respondents. Proujansky paid $140,000 into court and commenced the related proceeding to compel

respondents to deliver the INSTL stock to petitioners so that Proujansky could exercise his option to repurchase the shares pursuant to the August 1991 agreement. Petitioners then commenced this proceeding to compel respondents to deliver the INSTL shares to them so that they could sell the stock to Proujansky pursuant to the option agreement. Petitioners moved for summary judgment seeking a declaration that the INSTL stock passed under the legacy to them of the testator's nonpublicly traded stock. Respondents, claiming that the shares fell into the residuary clause because the testator did not own them when the will was executed and, thus, never intended to bequeath them to petitioners, cross-moved for summary judgment. Surrogate's Court granted the motion and denied the cross motion in a thorough and well-reasoned opinion. Respondents appeal.

We affirm. In our view, Surrogate's Court did not err by determining that the INSTL shares pass to petitioners under paragraph third, subparagraph L of the will. Our primary objective in construing a will, of course, is to ascertain the decedent's intent so that the will's purpose may be effectuated (see, Matter of Carmer, 71 NY2d 781, 785). Intent should be discerned, if possible, from a reading of the will itself as an entirety (see, supra, at 785; Matter of Cord, 58 NY2d 539, 544). If the testator intended to limit the bequest here to the stock of the three nonpublicly traded corporations that he owned when he executed the will, he could have easily done so with appropriate language. However, the testator chose to bequeath "any" stock in a nonpublicly traded corporation that he "may" own. The provision is clear and does not conflict with other provisions of the will (cf., Matter of Fitzgerald, 29 AD2d 325, affd 23 NY2d 973). Thus, there is no reason to resort to extrinsic evidence concerning the testator's distributive scheme (cf., supra). Even if extrinsic evidence is considered, it supports the plain reading of the will by Surrogate's Court. We reject respondents' contention that the testator's plan to leave the bulk of his estate to respondents is inconsistent with his intent to leave petitioners the INSTL shares, which constitute a small fraction of the testator's gross estate (cf., Matter of Carmer, supra, at 786).

We also reject respondents' argument that the August 1991 agreement created an "interrelated group of contract rights" that should pass together under the residuary clause. Contrary to respondents' argument, the testator provided for the distribution of the INSTL shares in his will and the contract rights acquired by the testator did not in any way diminish

his ownership of the stock. Nor did the option to repurchase the INSTL stock held by Proujansky defeat the testator's ownership of the stock. The option did not alter the testator's ownership interest in the shares but merely created an enforceable contract right against the testator that Proujansky was free to exercise within the stated time period *(see, Kaplan v Lippman,* 75 NY2d 320, 324-325; *Matter of Chickerell,* 43 AD2d 609, 610).

Similarly meritless is respondents' contention that Surrogate's Court refused to apply settled law with respect to specific bequests. While stock bequests are ordinarily deemed to be general bequests *(see, Matter of Fitch,* 281 App Div 65, 66), where the stock is not openly traded on an exchange or is stock of a closely held corporation, they are considered to be specific bequests *(see, supra,* at 67; *see also,* 7A Warren's Heaton Surrogates' Courts § 61 [1] [b], at 13-5 [6th ed]). Furthermore, while a will speaks as of the time of its execution with regard to specific bequests *(see, Matter of Cameron,* 278 NY 352, 360), if, as here, the bequest is broad, anticipating that additional property of the character described may be acquired after the will's execution *(see, Matter of Sheehan,* 195 Misc 964, 965; *cf., Matter of Fitzgerald, supra)* and containing no limiting language ("the stock of *any* non-publicly traded corporation which [the testator] *may own"* [emphasis supplied]), such after-acquired property will be included in the specific bequest *(see, Matter of Henderson,* 197 Misc 468, 470; *cf., Matter of Morris,* 11 Misc 2d 457; *Matter of Goldin,* 10 Misc 2d 864).

Respondents next argue that a constructive trust or equitable lien should be imposed on the INSTL stock or the proceeds of the sale of stock to offset the $120,000 loan owed by the testator's estate to purchase the stock. We disagree. A constructive trust will be imposed upon the demonstration of "(1) a confidential or fiduciary relationship, (2) a promise, (3) a transfer in reliance thereon, (4) a breach of the promise and (5) unjust enrichment" *(Scivoletti v Marsala,* 97 AD2d 401, 402, *affd* 61 NY2d 806). Here, respondents have failed to allege that there has been a breach of any promise that induced a transfer by them. Thus, Surrogate's Court properly refused to impose a constructive trust. Further, respondents have not supported the imposition of an equitable lien by alleging that they have "expended money * * * based on [the testator's] promise to convey" *(Johnston v Martin,* 183 AD2d 1019, 1020).

We have considered respondents' remaining contentions,

including their assertion that Surrogate's Court erred by denying their request for discovery, and find them to be without merit.

Mikoll, J. P., Crew III, White and Yesawich Jr., JJ., concur. Ordered that the order is affirmed, with one bill of costs.