(32 Misc. Rep. 653.)

### HOSEA v. SKINNER et al.

(Supreme Court, Special Term, New York County.   November, 1900.)

**1. WILLS—CONSTRUCTION—LEGACIES—ADEMPTION.**

Testator gave his four shares of the Passaic Water Enterprise, held in trust for him by a certain person,—one share to each of four legatees. These shares were not shares of corporate stock, but merely described the testator's interest in a joint business undertaking provided for under a contract entered into between several persons, among whom were he and the trustee, which shares, or their proceeds, he directed the trustee to transfer to the legatees. Testator, in his lifetime, disposed of these so-called shares, and invested the proceeds in bonds of a corporation called the Passaic Water Company, most of which he still owned at his death. *Held,* that the legatees took nothing under the will, since the legacies, being specific, were adeemed by the sale of the so-called shares.

**2. SAME—RESIDUARY CLAUSE—WHAT PASSES.**

Testator bequeathed certain specific legacies to named persons, and all the rest, residue, and remainder of his estate to others named. Before his death he sold the res bequeathed in the specific legacies, and invested the proceeds in the bonds of a corporation, most of which he still owned at his death. *Held,* that as to such bonds he did not die intestate, but that they passed under the residuary clause to the residuary legatees.

**3. SAME—TESTAMENTARY WRITING—EXECUTION.**

Where testator gave certain specific legacies to certain persons, and, after selling the property so bequeathed, wrote below the attestation clause that, having disposed of such legacies, he gave to the legatees certain sums in lieu thereof, and changed the residuary legatees, but such writing was not executed in the manner required to give it effect as a testamentary act, the beneficiaries took nothing by its provisions.

**4. SAME—CONSTRUCTION—INTENTION—EVIDENCE.**

Such writing, though manifesting an intention that the legatees of the specific legacies should receive the proceeds of the sale of such legacies, cannot affect the intent as shown by the will, since it was formed after sale of the legacies, and not at the time of executing the will.

Action by William G. Hosea, as executor of the will of Henry C. Andrews, deceased, against Alice R. Skinner and others, for the construction of the will of deceased.

George H. Adams, for plaintiff.

William J. Meagher, for defendants Hall and others.

William C. Camman, for defendant Jenkins.

William W. Niles, for defendants Warren and others.

BEEKMAN, J.   Henry C. Andrews died on the 19th day of August, 1897, leaving a will dated on the 9th day of June, 1887, which has been duly admitted to probate in New York county. The will reads as follows:

"I, Henry C. Andrews, hereby make this my last will and testament. I give to Kate M. Jenkins, at present of No. 111 East Twenty-Fifth street, New York City, the moneys deposited by me with W. Rodman Winslow, an assignment of which I have already executed, but not actually delivered, which moneys amount to $1,250, and also all income thereof; and I also give her $1,500 in money additional thereto, to be paid by my executor within three months after qualification. I also give her one share, out of the four owned by me, of the Passaic Water Enterprise, so called, and which four shares are held in trust for me by John R. Bartlett. I give to my cousin Alice Ropes Skinner another of said shares, and to my aunt Sarah Chandler Chute another of said

shares, and to my cousin Sarah B. Chute the other share in said enterprise; and I authorize and direct said Bartlett to transfer to said persons said shares, or the proceeds thereof, when realized, in the same manner as the said shares would have been to me. I give to William G. Hosea what moneys he now owes me, and I appoint said Hosea my sole executor. All the rest, residue, and remainder of my estate I give to Frances V. Gibbens and Constance Gibbens, share and share alike."

The legacies relating to the Passaic Water Enterprise were clearly specific in their nature. The "shares" referred to were not shares of corporate stock. The word was used as conveniently describing an undivided interest which the deceased had in a joint business undertaking provided for under a contract in that regard entered into between a number of persons, of whom John R. Bartlett was one. It was this particular interest which Bartlett held for him, under a declaration of trust to that effect, that the testator was bequeathing; and, as the legacies were specific, the existence of that interest in the ownership of the testator at the time of his decease was essential to the life of the bequests, and conditioned the right of the legatees to receive anything from the estate by virtue of the legacies in question. It appears that on the 17th day of July, 1891, six years before the death of the testator, the latter sold all of these so-called shares for the sum of $51,250 in cash, and immediately invested $50,000 of the purchase money in that amount of bonds, of the denomination of $1,000 each, of a corporation known as the Passaic Water Company. Of these bonds the testator at the time of his decease held 38. The effect of this sale was, as above stated, to cause an ademption of the legacies. There is nothing in the will which provides for any substitutionary gift in favor of the legatees in any such contingency, or which exhibits any intention on the part of the testator that the legacies should have any other effect than that which the law declares shall exist in cases where the subject-matter of a specific legacy is disposed of by a testator before his decease. A claim is made, however, that the will does show an intention on the part of the deceased to make the proceeds of the sale of the shares stand for the shares for the purposes of the legacies in question, and that the bonds above referred to, representing such proceeds, must be deemed to be within the subject-matter of the bequests. This theory seems to rest upon the direction to Bartlett, which the will contains, to transfer to the legatees the shares in question, or "the proceeds thereof, when realized, in the same manner as the said shares would have been to me." But it is obvious that this direction referred to, and could only refer to, the proceeds of the shares resulting from the transactions of the joint adventure; in other words, money or property received by Bartlett by way of dividend upon the shares. It assumed, by its very terms, a continuance of the interest of the testator in the enterprise down to the time of his death, and the existence, at the time the will should take effect, of the trust relation with respect thereto between the testator and Bartlett. Indeed, the measure of Bartlett's duty to the legatees adopted by the testator was the duty which Bartlett would owe to him if it were he, and not his legatees, who was seeking performance of the trust. After the sale the duties of Bartlett

under the trust did not terminate, but shifted to the vendee; and necessarily it is the latter, and no one else, to whom, after the sale, Bartlett became accountable for the proceeds of the shares arising out of the venture. The proceeds of the sale, of course, never came into Bartlett's hands. They were received directly by the testator upon the sale by him of his interest, and said proceeds were no more affected by the legacies in question than would be the proceeds of any property specifically bequeathed which had been sold before the death of the testator. The legacies in question having adeemed, there is nothing for the legatees to receive. It is claimed by the counsel for the next of kin that the testator died intestate with respect to the bonds of the Passaic Water Company above mentioned, inasmuch as they represent the proceeds of the shares which had been specifically bequeathed, and the residuary clause was necessarily exclusive of such property, and therefore of its proceeds. But any such forced and restricted meaning of such clause is plainly inadmissible. The law does not favor a condition of intestacy, and the courts are therefore slow to adopt a construction which would lead to any such result in whole or in part. In this case the residuary clause is as broad and sweeping as any such provision well could be, and, under familiar principles, embraces all personal property of which the testator was possessed at the time of his death that had not been elsewhere in his will effectively disposed of. The proceeds of the sale of said shares, in whatever form they existed, passed, therefore, to the residuary legatees, and the next of kin took no interest whatsoever in the estate of the testator.

In the course of the trial a certain writing, made by the testator below the attestation clause of his will, was offered in evidence. This was intended to be testamentary in its character, and reads as follows:

"Having sold the shares above mentioned, I give, in lieu of each share, the sum of $10,000 to each of the persons above mentioned as receiving a share; i. e. to Miss Jenkins $10,000 in addition to the $1,500 above given her, to Mrs. Chute $10,000, to Miss Chute $10,000, to Mrs. Skinner, $10.000. The Misses Gibbens having married, I give all the residue of my estate to the following in equal shares, viz.: The children of Alice Skinner; Nellie Bacon, daughter of Mrs. Ellen Bacon."

It was made, as the context shows, after the sale of the shares in question, doubtless in recognition of the fact that by reason of such sale the legacies specifically affecting said shares would be inoperative. But this paper was not executed in the manner required by law to give it effect as a testamentary act, and the beneficiaries therein mentioned took no interest whatsoever in testator's estate by reason of its provisions. It was contended, however, that it manifested an intention on the part of the testator that the legatees of the shares should receive the proceeds of the sale of such shares. That may be so, but it was an intent which was formed after the sale, and not at the time of the execution of the will of 1887, which has been admitted to probate. The writing in question, at best, represents an unexecuted purpose, formed after the sale, to make up to the legatees what they lost by the ademption of their legacies. It is

valueless, from any point of view, for the purpose of determining the rights of the parties to this action.

Judgment is ordered in conformity with the views above expressed, with costs to all parties payable out of the estate. A formal decision should be prepared and noticed for settlement, at which time I will hear the parties upon the question of allowances.