In the Matter of the Construction of the Will of ANDREW P. EIBL, Deceased.

Surrogate's Court, Orleans County, May 6, 1954.

*Hamilton Doherty,* as executor of Andrew P. Eibl, deceased. petitioner in person.

*Burroughs A. Strickland,* special guardian for Fred Babcock. an infant.

*Daniel W. Hanley, Jr.,* for John Eibl and another.

STURGES, S. The petitioner, who is the executor under the last will and testament of Andrew P. Eibl, deceased, has petitioned for decree determining the validity, construction and effect of the disposition of property under clause or paragraph designated '' Second '' in the will, and all interested parties have been brought into court and Burroughs A. Strickland, attorney at law, Albion, New York, has been duly appointed and qualified as special guardian for Fred Babcock, an infant under the age of fourteen years who is the devisee and legatee named in said paragraph. The said paragraph of said will reads as follows: '' Second: I give, devise and bequeath to my nephew, Fred Babcock, my one-half interest in the Orleans Amusement Company and the assets thereof to be his absolutely and forever.''

It is undisputed that at the time of the making of the said will, which was executed on November 8, 1952, the testator was the owner of a one-half interest in the Orleans Amusement Company and that subsequently, by written agreement dated July 10, 1953, the said testator, Andrew P. Eibl, agreed to dissolution of the partnership and assigned to the other partner, Ralph Eibl, '' all his right, title and interest in the business of the partnership hereby dissolved, and in the monies in the bank, good will, trade name, accounts due, or to become due,

and in all other assets of any kinds whatsoever, belonging to the partnership ". And in consideration thereof the other partner, Ralph Eibl, agreed to pay his retiring partner, this decedent, the sum of $4,000 without interest; $600 to be paid upon execution of the instrument and $100 to be paid the decedent on the first day of each month until the entire balance was paid.

The sole question here to be determined is whether Fred Babcock, who is an infant represented in this proceeding by Burroughs A. Strickland, his special guardian, is, by reason of the bequest and devise contained in paragraph " Second " of the will entitled to the moneys due or to become due under the written contract between the decedent and his former partner, or whether this sale of the business by the decedent to his former partner has resulted in a revocation or ademption. If the sale resulted in a revocation or ademption, the proceeds due or to become due would go to the parents of the testator as remaindermen and the infant nephew, Fred Babcock, would receive nothing.

In section 1582 of volume 57 of American Jurisprudence, the editors state: " The rule is universal that in order to make a specific legacy effective the property bequeathed must be in existence and owned by the testator at the time of his death, and the applicability of the doctrine of ademption by alienation or extinguishment to testamentary gifts which are specific in nature is accordingly recognized in many decisions, the statement having frequently been made that the distinguishing characteristic of a specific legacy is its liability to ademption."

And again in section 1586 of volume 57 of American Jurisprudence, in discussion of the question as to the efficacy of a devise or bequest to pass the proceeds of a sale made during the testator's lifetime, the editors further state: " In this connection it may be said that there is practically a unanimity of opinion to the effect that property into which the proceeds of a sale of the kind in question have been converted cannot be substituted for the original subject matter of the gift, at least where it does not itself come within the descriptive language employed by the testator, and hence does not pass under the original devise or bequest."

In general, it would seem that the editors in American Jurisprudence, in the section quoted, have fairly expressed not only the general but the New York law.

In this State, it has been held by some courts that there is a distinction between ademption and revocation, whereas other decisions seem to suggest that ademption and revocation are one and the same thing (see discussion in 7 Warren's Heaton on Surrogates' Courts [6th ed.], § 90, subd. 1). In any event, it is academic as to whether the sale of the business be called a revocation or an ademption. The saving clause in section 39 of the Decedent Estate Law merely provides that an act of the testator, " by which his estate or interest in property, previously devised or bequeathed by him, shall be altered, but not wholly divested, shall not be deemed a revocation of the devise or bequest of such property; but such devise or bequest shall pass to the devisee or legatee, the actual estate or interest of the testator ". Section 40 of the Decedent Estate Law reads: " But if the provisions of the instrument by which such alteration is made, are wholly inconsistent with the terms and nature of such previous devise or bequest, such instrument shall operate as a revocation thereof, unless such provisions depend on a condition or contingency ". Inasmuch as the testator in this case had specifically devised and bequeathed his " one-half interest in the Orleans Amusement Company and the assets thereof " to his nephew, Fred Babcock, and inasmuch as the testator had subsequently sold and assigned all of his interest in the Orleans Amusement Company, including all the assets thereof (which was a one-half interest), to his partner, Ralph Eibl, he had wholly divested himself of his one-half interest in the Orleans Amusement Company and the assets thereof by an instrument, the provisions of which were wholly inconsistent with the terms and nature of such previous devise or bequest, and this sale would be a revocation as described in sections 39 and 40 of the Decedent Estate Law. This was an absolute sale and termination of the partnership. The decedent no longer had a one-half interest, or any interest, in the Orleans Amusement Company. He merely had the agreement of the purchaser of the decedent's one-half interest in the partnership to pay him the balance of the purchase price at the rate of $100 per month.

As Surrogate Wingate holds in *Matter of Rubinstein* (169 Misc. 273, 275–276): " The principles respecting the ademption of specific testamentary gifts are clearly and firmly established in law. ' *Ademption* * * * is only predicable of a specific legacy. It takes place, as the term imports, when the thing which is the subject of the legacy, is *taken away*, so that when

the testator dies, though the will purports to bestow the legacy, the thing given is not to be found to answer the bequest. It has been extinguished, if a specific debt, by having been paid to the testator himself; if an article of property, by its sale or conversion.' (*Beck* v. *McGillis,* 9 Barb. 35, 56, 57.) 'Unless the subject of a specific legacy exists, unchanged in substance, at the date of the will, there results an ademption, complete or partial according to the facts.'"

The principle is that a change in the nature of the property works an ademption unless it is a change in name or form only. *Matter of Brann* (219 N. Y. 263, 268) and in this case, Justice CARDOZO says: "It was once thought that ademption was dependent on intention, and ' it was, therefore, held in old days that when a change was effected by public authority, or without the will of the testator, ademption did not follow. But for many years, that has ceased to be law ' * * * It has ceased to be law in England * * * It has ceased to be law in New York * * * What courts look to now is the fact of change. That ascertained, they do not trouble themselves about the reason for the change."

In *Matter of Ireland* (257 N. Y. 155), the testator's preferred stock, which he had bequeathed under his will, was subsequently sold by his committee after he had become incompetent, and Justice CRANE held on pages 158 and 159: " In the absence of statute, there is no power in the courts to change a specific into a general legacy or turn over the balance of the proceeds derived from the sale of the specific property to the legatee in place of the particular thing intended to be given. Out of the moneys received from the sale of the preferred shares by the committee there was left a balance over and above expenditures for the incompetent of $1,848.40, which was turned over to the executor as part of the estate. To give this to Lena M. Whitmore in place of the preferred shares might seem equitable, but it is not in accordance with the directions or will of the testator. He gave her the preferred shares of stock, not the proceeds thereof, and, according to all the decisions, when the specific thing given ceases to exist, the legacy falls; it cannot be made up out of other property in the estate."

In *Matter of Smith* (147 Misc. 139), the testator bequeathed assets of a business to his wife and the good will and the right to continue the name to his son, with the direction to the wife to pay $2,000 to the son as business capital. Subsequently the father turned the business over to the son together with $2,000

upon the condition that the son collect and pay over to the father certain accounts receivable. After death of the wife, who was the executrix, the son applied for letters *c. t. a.* and his application was resisted by his sister. The court held as follows (p. 141): "In conformity with the agreement, petitioner received a bill of sale of the plumbing and heating business together with the good will thereof. It is quite evident from the agreement and the bill of sale that the decedent had disposed of his business and the good will thereof in his lifetime. He no longer was interested in the business which he attempted to dispose of by the fourth paragraph of his will. All that remained in the decedent at the time of his death was the right to receive the proceeds of the outstanding accounts which he had expressly reserved unto himself. As far as he was concerned, his interests in the plumbing business had ceased. I am, therefore, of the opinion that on account of the non-existence of the business at the time of decedent's death, the provisions of the fourth paragraph of his will never became effective and consequently the petitioner acquired no right or interest of any character in his father's estate."

Under the above decisions, it is clear that the sale by the decedent of his one-half interest in the partnership operating under the name of Orleans Amusement Company, subsequent to the making and the execution of the will and prior to the death of the decedent resulted either in a revocation or ademption of the bequest and devise under paragraph "Second", regardless of the fact that there are still moneys due the estate as the balance of the proceeds of said sale, as there is no clause in the will giving the proceeds of such sale to the specific legatee and devisee.

I hold that the balance of moneys due or to become due from the sale of testator's interest in the Orleans Amusement Company does not pass to the nephew, Fred Babcock, under paragraph "Second" of the will, but goes to the general estate subject to payment of debts, funeral expenses and expenses of administration, with the residuary to be distributed to the remaindermen under the provisions of paragraph or clause of the will marked "Fourth".

Enter decree in conformity herewith.